ELLEN F. ROSENBLUM
Attorney General
JESSE B. DAVIS #052290
Senior Assistant Attorney General
DYLAN HALLMAN #173679
Assistant Attorney General
Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email: Jesse.B.Davis@doj.state.or.us
        dylan.hallman@doj.state.or.us

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| JOAN SCHRADER and SPECIALTY FAMILY HOMES, LLC,<br><br>    Plaintiffs,<br><br>  v.<br><br>FARIBORZ PAKSERESHT, in his official and individual capacity as Director of Oregon Department of Human Services; OREGON DEPARTMENT OF HUMAN SERVICES; OFFICE OF DEVELOPMENTAL DISABILITIES SERVICES (ODDS),<br><br>    Defendants. | Case No.  3:22-cv-01957-JR<br><br>DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO FIRST AMENDED COMPLAINT |

Defendants Fariborz Pakseresht and the Oregon Department of Human Services

("ODHS"), in response to Plaintiffs' First Amended Complaint, hereby admit, deny, and

affirmatively allege as follows:

Page 1 -   DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO FIRST AMENDED
           COMPLAINT
           JBD/a4s/775779850

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

1.

Paragraph 1 contains consists of Plaintiffs' characterization of this action, to which no response is required. To the extent a response is required, defendants deny Plaintiffs' characterization of the rule in question. Defendants admit that the Office of Developmental Disabilities Services ("ODDS") is an office within the Oregon Department of Human Services ("ODHS").

2.

Defendants deny the allegations of paragraph 2.

3.

Defendants deny the allegations of paragraph 3.

4.

Defendants deny the allegations of paragraph 4.

5.

Defendants admit that Schrader and her company, SFH, provide care to disabled individuals in the community within the District of Oregon and that SFH is endorsed to provide Community Living Supports and 24-hour residential care.

6.

Defendants admit the first sentence of paragraph 6. Defendants lacks knowledge or information sufficient to admit or deny the allegations of the second sentence, and on that basis deny them. Defendants admit the remaining allegations of paragraph 6.

7.

Defendants admit the first sentence of paragraph 7. Defendants admit that the Court has original jurisdiction over the federal claims under 28 U.S.C. § 1331. Defendants deny the allegation that this Court has jurisdiction pursuant to 28 U.S.C. § 1367. Defendants admit the allegations of the final sentence of paragraph 7.

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

8.

Paragraph 8 consists largely of characterizations and arguments of law, particularly 42 U.S.C. § 1396n(k), to which no response is required. Defendants admit generally that the Community First Choice program, authorized by 42 U.S.C. § 1396n(k), provides for additional funding, available through the Medicaid program, to provide services eligible individuals in home and community-based settings who would otherwise require an institutional level of care. Defendants admit that the Oregon Department of Human Services receives a Federal Medical Assistance Percentage match increased by six percentage points for services authorized under 42 U.S.C. § 1396n(k) and provided in accordance with an approved state plan. Defendants deny the allegations of paragraph 8 to the extent they are inconsistent with that statute or its implementing regulations.

9.

Paragraph 9 consists of characterizations of law, particularly 42 U.S.C. § 1396n(k)(3)(B), to which no response is required. Defendants deny the allegations of paragraph 9 to the extent they are inconsistent with that statute or its implementing regulations.

10.

Paragraph 10 consists of characterizations of law, particularly 42 U.S.C. § 1396a(a)(23), to which no response is required. Defendants deny the allegations of paragraph 10 to the extent they are inconsistent with that statute or its implementing regulations.

11.

Paragraph 11 consists of characterizations of law, to which no response is required. Defendants deny the allegations of paragraph 11 to the extent they are inconsistent with applicable law.

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

## 12.

Paragraph 12 consists of characterizations of law, to which no response is required. Defendants deny the allegations of paragraph 12 to the extent they are inconsistent with applicable law.

## 13.

Paragraph 13 consists of characterizations of law, to which no response is required. Defendants deny the allegations of paragraph 13 to the extent they are inconsistent with applicable law.

## 14.

Paragraph 14 consists of characterizations of law, to which no response is required. Defendants deny the allegations of paragraph 14 to the extent they are inconsistent with applicable law.

## 15.

Paragraph 15 consists largely of characterizations of law, to which no response is required. Defendants deny the allegations of paragraph 15 to the extent they are inconsistent with applicable law. To the extent further response is required, Defendants admit that under the relevant program rules, when an individual lives in a residential setting, the provider is responsible for providing all attendant care support services needed by the individual, but not necessarily all services needed by the individual. Defendants admit that when an individual lives in a nonresidential setting under ODHS's Community Living Supports (CLS) program, the individual may choose from among available and eligible providers of attendant care services and other services. Defendants deny the allegations of paragraph 15 not expressly admitted herein.

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

16.

Paragraph 16 consists of characterizations of law, to which no response is required. Defendants deny the allegations of paragraph 16 to the extent they are inconsistent with applicable law.

17.

Paragraph 17 consists largely of characterizations of law, to which no response is required. Defendants deny the allegations of paragraph 17 to the extent they are inconsistent with applicable law. To the extent further response is required, Defendants admit that ODDS, often through a designee, uses an individualized service plan (ISP) to describe and authorize, based on an assessment of need, the services needed by the individual, which may include attendant care services, nursing services, behavior supports, and other services, and who is responsible for providing those services. Defendants admit that the ISP sets forth the maximum service level authorized for the individual, and that, in the context of the CLS program, the attendant care services authorized will be expressed in a particular number of hours per month. Defendants admit that an ISP may contain specific protocols or other planning related to the individual's needs. Defendants admit that the nature of individuals' disabilities, needs, and strengths, among other things, are relevant to the amount of care the individual needs. Defendants deny that the ISP assesses an individual's needs and deny the allegations of paragraph 17 not expressly admitted herein.

18.

Defendants admit that ODHS uses assessments of an individual's specific needs and strengths to determine the types of services and the service level to be provided. Defendants admit that for attendant care services, the service level is expressed as a monthly rate for individuals in residential care and is expressed as a maximum number of hours for individuals in

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

the CLS program. Defendants admit that the Supports Intensity Scale (SIS) was developed before the Community First Choice Program was implemented, and otherwise deny the allegations of the second sentence of paragraph 18. Defendants admit that the presumptive, but not conclusive, maximum service level for adults rated under the Oregon Needs Assessment (ONA) is 16.7 hours per day of attendant care, but otherwise deny the remaining allegations of paragraph 18 not expressly admitted herein.

19.

Defendants lack knowledge or information sufficient to admit or deny the allegations of paragraph 19, and on that basis deny them.

20.

Defendants admit the first sentence of paragraph 20. Defendants admit that SFH is endorsed to provide care through the CLS program and through 24-hour residential care. Defendants lack knowledge or information sufficient to admit or deny the allegations of the second sentence, and on that basis deny them. Defendants deny the allegations of paragraph 20 not expressly admitted herein.

21.

Defendants admit that Schrader has provided care in the adult foster home, 24-hour residential care, and CLS programs. Defendants lack knowledge or information sufficient to admit or deny the remaining allegations of paragraph 21, and on that basis deny them.

22.

Defendants lack knowledge or information sufficient to admit or deny the allegations of paragraph 22, and on that basis deny them.

23.

Defendants admit that before she died in September 2021, AMC was an adult with intellectual or developmental disabilities ("I/DD"). Defendants admit that ODDS funded CLS services for AMC provided by SFH based on ODDS' belief that AM had moved into her

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

family's home, when in fact A.M. actually had moved into the living room of Schrader's home. Defendants admit that it authorized nursing services for AMC and that Schrader advocated for AMC to receive a greater amount of attendant care hours and nursing services. Defendants admit that AMC was hospitalized on or about September 30, 2019, while under Plaintiffs' care, but deny Plaintiffs' allegations regarding the cause of that hospitalization. Defendants admit that Plaintiffs sent an email to Kronenberg and others at ODDS and Clackamas County on October 1, 2019, stating in relevant part, "Not providing monitoring [for AMC] is a minimum neglect and in my opinion constitutes abuse." Defendants admit that during AMC's hospitalization, ODDS sent Plaintiffs an order dated October 2, 2019, informing them that ODDS would no longer pay for in-home services to AMC if those services were delivered by SFH at Schrader's home. Attached hereto and labeled as Exhibit A is a true copy of that October 2, 2019, notice, referred to herein as the "stop payment order." ODHS also sent a second order dated October 2, 2019, to Plaintiffs informing them ODDS believed that Plaintiffs may be operating an unlicensed residential training home or adult foster home without the license required by ORS 443.410 and 443.725, respectively, and directing them to stop doing so. Attached hereto and labeled as Exhibit B is a true copy of that second October 2, 2019, order, referred to herein as the "cease and desist order." Defendants deny the remaining allegations of paragraph 23 not expressly admitted herein, and specifically deny that its actions were retaliatory in any respect.

24.

Defendants admit that Schrader advocated for AMC to receive a greater amount of attendant care and nursing services than the amount ODDS had authorized, to which Plaintiffs had agreed. Defendants admit that Schrader attempted to persuade ODDS that Schrader's home was a setting in which SFH could permissibly provide CLS services to AMC. Defendants admit that those attempts included executing at least two purported transfers of interest in Schrader's home via bargain and sale deeds, one from Schrader to her spouse that listed the consideration for that transfer as described as "love and affection," and the second from Schrader to Patrick

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Edward McFall Sr., a person later described by Schrader as "a trusted friend," which deed listed the consideration as "other," as well as representing to ODDS that she had moved out of her home and into a dwelling located at 8431 SE 11th Ave., Portland, Oregon. Attached hereto and labeled as Exhibits P and Q, respectively, are copies of the deeds just described. Defendants admit that ODDS resumed paying SFH for providing AMC's attendant care when AMC moved out of Schrader's home into the dwelling located at 8431 SE 11th Ave., Portland, Oregon, a dwelling not owned, controlled or operated by Schrader. Defendants admit that AMC's guardians requested a reasonable accommodation for AMC, which ODDS lawfully denied. Defendants deny the remaining allegations of paragraph 24 not specifically admitted herein.

25.

Defendants admit, on information and belief, that AMC moved into the dwelling located at 8431 SE 11th Ave., Portland, Oregon, a dwelling not owned, controlled or operated by Schrader at some later time, and ODDS resumed paying SFH for providing CLS services to AMC at that dwelling. Defendants lack knowledge or information sufficient to admit or deny the allegations of the second, third, and fourth sentences of paragraph 25, and on that basis deny them. Defendants admit Schrader requested that AMC move back in with Schrader and that ODDS agree to pay SFH for providing CLS services to AMC in that dwelling. ODDS lawfully denied the request to pay SFH for providing CLS services to AMC in that dwelling. Defendants deny the allegations of paragraph 25 not expressly admitted herein.

26.

Paragraph 26 consists of Plaintiffs' characterization of their reasons for pursuing other litigation, to which no response is required. To the extent that a response may be required, Defendants admit that Schrader has advocated for other individuals with I/DD, but deny the remaining allegations of paragraph 26 not expressly admitted herein.

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

27.

Consistent with its response to paragraph 23 above, Defendants admit that Plaintiffs sent an email to Kronenberg and others at ODDS and Clackamas County on October 1, 2019, stating, in part, "Not providing monitoring [for AMC] is a minimum neglect and in my opinion constitutes abuse." Defendants admit that on October 2, 2019, ODDS sent Plaintiffs the stop payment order and cease and desist order described previously, Exhibits A and B. Defendants deny the allegations of paragraph 27 not expressly admitted herein.

28.

Paragraph 28 consists of legal conclusions and argument, to which no response is required, or characterizations of the Stop Payment Order, a written document that speaks for itself, to which no response is required. Defendants deny the allegations of paragraph 28 to the extent they are inconsistent with applicable law or the Stop Payment Order. To the extent a response is required, Defendants admit that under the relevant program rules, when an individual lives in a residential setting such as an adult foster home, the provider is responsible for providing room, board, and all attendant care support services needed by the individual, but not necessarily all services needed by the individual. Defendants deny the allegations of paragraph 28 not expressly admitted herein.

29.

Defendants admit that AMC was had a choice of where to live and from to receive attendant care services, but deny that AMC's choices included selecting a care arrangement for which AMC was not eligible and further deny that Plaintiffs were authorized to provide care, or be paid for providing care, for services for which AMC was not eligible. Defendants deny the allegations of paragraph 29 not expressly admitted herein.

JBD/a4s/775779850

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

30.

The first through fifth sentences of paragraph 30 consist largely of legal conclusions and argument, to which no response is required, and Defendants deny those allegations to the extent they are inconsistent with applicable law. Defendants specifically deny that its rationale for issuing the Stop Payment Order was a pretext. Defendants deny the allegations of the final sentence of paragraph 30. Defendants admit that according to data made available by ODHS, in 2022, there were 120 substantiated allegations of abuse or neglect of I/DD adults in "regulated" settings and 59 substantiated allegations of abuse or neglect of I/DD adults in "community" settings, but deny the remainder of that portion of paragraph 30 in which Plaintiffs make inferences from data. Defendants decline to respond to the allegation that "No abuse was reported, much less substantiated, with respect to Plaintiff," pursuant to legal obligations imposed by sources including but not limited to ORS 430.763, OAR 411-360-0210(5), OAR 409-100-0030(8), OAR 409-100-0050(5), and OAR 409-100-0100(1). Defendants deny the remaining allegations of paragraph 30 not expressly admitted herein.

31.

Defendants admit that AMC was in the hospital at the time it issued the stop payment and cease and desist orders (Exs. A and B), but otherwise deny the allegations of paragraph 31.

32.

Paragraph 32 consists largely of legal conclusions and argument, to which no response is required, and Defendants deny those allegations to the extent they are inconsistent with applicable law. To the extent a response is required, Defendants admit that ODDS proposed amendments to OAR chapter 411, divisions 323 and 450, in October 2022. Defendants deny the remaining allegations of paragraph 32 not expressly admitted herein.

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

33.

Defendants lack knowledge or information sufficient to admit or deny the allegations of regarding the manner in which Schrader had previously reviewed information about ODDS rulemaking, and on that basis deny those allegations. Defendants deny the remaining allegations paragraph 33, and affirmatively allege both that Schrader received notice of the relevant rulemaking and that Schrader submitted more than 17 pages of written comments regarding the proposed rules.

34.

Defendants admit that the rule amendments to OAR chapter 411, divisions 323 and 450, became final on December 20, 2022.

35.

Paragraph 35 consists largely of characterizations of law, to which no response is required. Defendants deny the allegations of paragraph 35 to the extent they are inconsistent with applicable law.

36.

Paragraph 36 consists largely of characterizations of law, to which no response is required. Defendants deny the allegations of paragraph 36 to the extent they are inconsistent with applicable law. To the extent a response is deemed required, Defendants deny the allegations of paragraph 36.

37.

Defendants deny the allegations of paragraph 37.

38.

Paragraph 38 consists largely of legal characterization and argument regarding the Integration Mandate and the rule amendments in question, to which no response is required. Defendants deny the allegations of paragraph 38 to the extent they are inconsistent with applicable law, and specifically deny that the rule amendments in question violate the Integration

JBD/a4s/775779850

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Mandate or any other applicable legal obligation. Defendants deny the remaining allegations of paragraph 38.

39.

Paragraph 39 consists largely of legal characterization and argument, to which no response is required. Defendants deny the allegations of paragraph 39 to the extent they are inconsistent with applicable law, and specifically deny that the rule amendments are inconsistent any applicable legal obligation.

40.

Defendants deny the allegations of paragraph 40.

41.

On information and belief, Defendants admit that certain of SFH's clients wish to live with Schrader or employees of SFH while continuing to receive CLS services, an arrangement under which those clients are not eligible to receive CLS services. Defendants admit that NOPAs have been issued to five SFH clients informing them that they are not eligible to receive CLS services from SFH under the relevant current circumstances. Defendants deny that the Final Rule requires SFH's clients to choose between leaving their chosen homes or finding new providers of support services. Defendants lack knowledge or information sufficient to admit or deny the allegations of the remaining allegations of paragraph 41, and on that basis deny them.

42.

Defendants admit that in 2023, five SFH clients were notified that they are not eligible to receive CLS services from SFH under the relevant current circumstances. Defendants deny Plaintiffs characterization of those communications and deny the remaining allegations of paragraph 42 not expressly admitted herein.

43.

Defendants deny the allegations of paragraph 43.

JBD/a4s/775779850

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

44.

Defendants allege that, on December 15 and 20, 2022, Schrader submitted requests to ODDS for a variance from OAR 411-450-0060(6)(b), true copies of which are attached hereto and labeled as Exhibit C. Defendants allege that on January 24, 2023, ODDS responded by letter to those variance requests, a true copy of which is attached hereto and labeled as Exhibit D. Plaintiffs did not provide the information requested of them in Exhibit D. Defendants allege that on February 6, 2023, Schrader emailed two individuals employed by Clackamas County. That email was forwarded to ODDS. Defendant's counsel responded, on behalf of ODDS, to that email by sending an email to Plaintiffs' then-counsel, Justin Steffen, on February 9, 2023. A true copy of the February 6 and 9, 2023, email exchange is attached hereto as Exhibit E. Plaintiffs did not provide the information requested of them in Exhibit E. On July 13, 2023, ODDS emailed a letter via its counsel to Plaintiffs via their then-counsel, Justin Steffen, to request the information previously requested with respect to Plaintiffs' variance requests. Attached hereto as Exhibit F is a true copy of the July 13, 2023, email and its attached letter. In response to that July 13, 2023, email and letter, Schrader, who was no longer represented by counsel, emailed Defendant's counsel on July 26, 2023. That July 26, 2023, email led to an email exchange between Defendants' counsel and Schrader. Attached hereto as Exhibit G is a true copy of Ms. Schrader's July 26, 2023, email to Defendants' counsel. Plaintiffs did not provide the information requested of them in Exhibits D, E, F, and G. Defendants deny the allegations of paragraph 44 not expressly admitted herein.

45.

Defendants admit that Schrader sent an email to Defendant's counsel on September 13, 2023. A true copy of that September 13, 2023, email, redacted to replace client names with initials, is attached hereto as Exhibit H. Defendants allege that on January 31, 2024, ODDS responded by sending a letter from Defendant's counsel to Plaintiffs' counsel, Elliott J. Williams, a true copy of which is attached hereto and labeled as Exhibit J. Defendants allege that, as of the

JBD/a4s/775779850

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

date of filing of this Answer, Plaintiffs have not provided any of the information requested of them in Exhibit D, E, F, G, and J. Defendants deny the allegations of paragraph 45 not expressly admitted herein.

46.

Defendants admit that ODDS sent notices of planned action (NOPAs) to five individuals for whom SFH provides attendant care services. Defendants allege that those NOPAs are written documents that speak for themselves. Defendants deny Plaintiffs' characterization of the NOPAs and the remaining allegations of paragraph 46 not expressly admitted herein.

47.

Defendants deny the allegations of paragraph 47.

48.

Defendants deny the allegations of paragraph 48.

49.

Defendants lack knowledge or information sufficient to admit or deny the allegations of the first, second, and fourth sentences of paragraph 49, and on that basis deny them. As to the third sentence, defendants allege that the ISPs for these individuals are written documents that speak for themselves. Defendants deny the allegations of the final sentence of paragraph 49 and the remaining allegations of paragraph 49 not expressly admitted herein.

## FIRST CLAIM FOR RELIEF

50.

In response to paragraph 50, Defendants incorporate by reference the responses to paragraphs 1 through 49 above.

51.

Defendants deny the allegations of paragraph 51.

JBD/a4s/775779850

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

52.

Defendants deny the allegations of paragraph 52.

## SECOND CLAIM FOR RELIEF

53.

In response to paragraph 53, Defendants incorporate by reference the responses to paragraphs 1 through 52 above.

54.

Defendants admit the allegations of paragraph 54.

55.

Defendants deny the allegations of paragraph 55.

56.

Defendants deny the allegations of paragraph 56.

57.

Defendants deny the allegations of paragraph 57.

58.

Defendants admit that he acted under color of state law in adopting the rule amendment in question.

59.

Defendants deny the allegations of paragraph 59.

60.

Defendants deny the allegations of paragraph 60.

## THIRD CLAIM FOR RELIEF

61.

In response to paragraph 61, Defendants incorporate by reference the responses to paragraphs 1 through 60 above.

JBD/a4s/775779850

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

62.

Defendants deny the allegations of paragraph 62.

63.

Defendants deny the allegations of paragraph 63.

## FOURTH CLAIM FOR RELIEF

64.

In response to paragraph 64, Defendants incorporate by reference the responses to paragraphs 1 through 63 above.

65.

Paragraph 65 consists of legal conclusion and argument, to which no response is required. Defendants deny the allegations of paragraph 65 to the extent they are inconsistent with applicable law, and specifically deny that Plaintiffs are entitled to relief of any kind.

66.

Defendants deny the allegations of paragraph 66.

67.

Defendants deny the allegations of paragraph 67.

68.

Defendants deny the allegations of paragraph 68.

69.

Defendants deny the allegations of paragraph 69.

## FIFTH CLAIM FOR RELIEF

70.

In response to paragraph 70, Defendants incorporate by reference the responses to paragraphs 1 through 69 above.

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

71.

Defendants deny the allegations of paragraph 71.

72.

Defendants deny the allegations of paragraph 72.

73.

Defendants deny the allegations of paragraph 73.

74.

Defendants deny the allegations of paragraph 74.

75.

Except as expressly admitted herein, Defendants deny, generally and specifically, each and every other allegation of fact or law asserted by Plaintiffs not expressly admitted herein.

## AFFIRMATIVE DEFENSES

76.

For purposes of Defendants' defenses and affirmative defenses, Defendants reallege and incorporate the matters admitted, denied, and affirmatively alleged in paragraphs 1 through 75 herein, and further allege as follows.

## FIRST AFFIRMATIVE DEFENSE

### Failure to state a claim for relief (Fed. R. Civ. P. 12(b)(6), all claims)

77.

Plaintiffs have failed to allege ultimate facts sufficient to state a claim for relief on any of their claims for relief.

JBD/a4s/775779850

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

## SECOND AFFIRMATIVE DEFENSE

### Qualified immunity

78.

To the extent Plaintiffs seek damages of any kind, Defendant Pakseresht is entitled to qualified immunity because no reasonable public official under the circumstances would have understood that their conduct violated a clearly established right of the Plaintiffs.

## THIRD AFFIRMATIVE DEFENSE

### Eleventh Amendment Immunity

79.

One or more of Plaintiffs' claims are barred by the Eleventh Amendment to the United States Constitution.

## FOURTH AFFIRMATIVE DEFENSE

### Eleventh Amendment Immunity from Noneconomic Damages

80.

Noneconomic damages, such as those for pain and suffering, emotional distress, and inconvenience, may not be recovered under Plaintiffs' claims arising under Plaintiffs' claims arising under the Rehabilitation Act, Americans with Disabilities Act, Affordable Care Act, and Fair Housing Act. *Cummings v. Premier Rehab Keller, P.L.L.C.*, 142 S. Ct. 1562, 1576 (2022). The State of Oregon and its officials retain their immunity from such damages conferred by the Eleventh Amendment to the United States Constitution.

## FIFTH AFFIRMATIVE DEFENSE

### Failure to mitigate

81.

Plaintiffs failed to take reasonable action to mitigate their harm.

JBD/a4s/775779850

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

## SIXTH AFFIRMATIVE DEFENSE

### Standing (First, Second, Third, and Fourth Claims)

82.

Plaintiffs lack standing to assert their First, Second, Third, and Fourth Claims because they lack capacity to assert the rights of their disabled clients and because they lack associational standing to assert those claims.

## SEVENTH AFFIRMATIVE DEFENSE

### Issue Preclusion

83.

Plaintiffs conducted previous litigation, *Schrader and Specialty Family Homes, LLC et al. v. Oregon Department of Human Services*, Marion County Circuit Court Case No. 19CV50925 (filed Nov. 27, 2019) (hereinafter, "state court case"), regarding some of the same issues raised in their Second Amended Complaint.

84.

In the state court case, certain issues and claims were resolved against Plaintiffs and in favor of the Department of Human Services in the court's "Order Granting Respondent's ORCP 21 Motions to Dismiss and Strike," a true copy of which is attached hereto and labeled as Exhibit K. That Order contained findings of fact and conclusions of law, including but not limited to the following:

    A.  The finding that ODHS did not agree to 376 hours per week of attendant care for AMC (referred to in the state court case as AM), and that Plaintiffs' assertions to the contrary were false;

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

B. The holding that "nothing in Medicaid statutes or regulations or in Oregon statutes or administrative rules, prohibits DHS from requiring a license to provide care in a provider-owned or controlled residential setting. DHS's licensing requirement does not violate a developmentally disabled client's freedom to choose her provider or providers of services."

C. The holding that "AM does not have a right under Medicaid statute or regulations to live in a setting owned or controlled by petitioners free of generally applicable licensing requirements imposed by Oregon law."

D. The holding that Schrader and SFH "do not have a right under Medicaid statutes or regulations to provide AM's care in a setting owned or controlled by [Schrader and SFH] free of generally applicable licensing requirements imposed by Oregon law."

Each of those findings or holdings were conclusive findings actually litigated on their merits that are entitled to preclusive effect in this case.

## EIGHTH AFFIRMATIVE DEFENSE

### Unclean Hands

85.

Plaintiffs' claims are barred by the doctrine of unclean hands.

## NINTH AFFIRMATIVE DEFENSE

### Statute of limitations

86.

Plaintiffs have failed to commence one or more of their claims within the applicable statute of limitations.

JBD/a4s/775779850

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

WHEREFORE, Defendants pray as follows:

1. That Plaintiffs be denied recovery upon the claims set forth in the Second Amended Complaint, and that the Second Amended Complaint be dismissed with prejudice in its entirety;

2. That Defendants recover their costs and disbursements expended in defense of this matter; and

3. That Defendants be granted such other and further relief as this Court deems just and equitable.

DATED March 7, 2024.

Respectfully submitted,

ELLEN F. ROSENBLUM
Attorney General

*s/ Jesse B. Davis*
JESSE B. DAVIS #052290
Senior Assistant Attorney General
DYLAN HALLMAN #173679
Assistant Attorney General
Trial Attorneys
Tel (971) 673-1880
Fax (971) 673-5000
Jesse.B.Davis@doj.state.or.us
dylan.hallman@doj.state.or.us
Of Attorneys for Defendants

JBD/a4s/775779850

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000



**Department of Human Services**

Office of Developmental Disabilities Services

500 Summer St. NE E-09

Salem, OR 97301-1073

Voice: 503-945-5811

Fax: 503-373-7274

TTY: 800-282-8096

October 2, 2019

Joannie Schrader
11806 SE Solomon Ct.
Happy Valley, OR 97086

Ms. Schrader,

The Office of Developmental Disabilities Services has been informed that you are again, providing services to someone in your unlicensed home. As previously communicated to you in July 2015, individuals are not able to hire Specialty Family Homes to deliver in-home services under OAR 411-450 while residing at your address.

It has come to our attention that an adult woman continues to reside in your home and receive in-home services from Specialty Family Homes (SFH).

The Office of Developmental Disabilities Services will stop payment for this woman effective immediately. She and her guardians are being sent separate letters informing them of the same information.

Sincerely,

Lilia Teninty
Office of Developmental Disabilities Services
500 Summer St. NE
Salem, OR 97301

Cc: Chelas Kronenberg, ODDS
    Barb Southard, Office of Developmental Disabilities Licensing
    Kim Cota, Clackamas County DD
    Melissa Lymburner, Clackamas County DD

*"Assisting People to Become Independent, Healthy and Safe"*

Defs.' Answer
Exhibit A  Page 1 of 1



**Department of Human Services**

Office of Developmental Disabilities Services

500 Summer St. NE E-09

Salem, OR 97301-1073

Voice: 503-945-5811

Fax: 503-373-7274

TTY: 800-282-8096

October 2, 2019

Joan Schrader
11806 SE Solomon Ct.
Happy Valley, OR 97086

RE: Cease & Desist operation
    of unlicensed training home

Dear Ms. Schrader:

It has come to the Department's attention that you may be operating an unlicensed Residential Training Home or an Adult Foster Home. Pursuant to Oregon Revised Statutes ORS 443.410 and ORS 443.725, a license is required to operate either of the above- mentioned type of facility or home.

We understand that you are continuing to provide care to a resident in your home. Although you currently have a Department endorsement to provide 24-hour residential services to children and adults with developmental disabilities, that endorsement alone does not permit you to provide such care in your home. The Department has provided previous explanations to you regarding the limitations and requirements of providing care to individuals in your home, including any accessory dwelling unit to your home. You may not continue to provide care services to persons unrelated to you by blood or marriage in your home without the required license.

**<u>Therefore, the Department instructs you to cease and desist from this activity immediately, as you are in violation of the Oregon Revised Statutes and administrative rules regarding the provision of care to individuals. Failure to cease and desist may result in legal action against you to enjoin your unlicensed care and subject you to criminal prosecution under ORS 443.991</u>**.

If you have any questions, please contact me at 503-373-2165.

Sincerely,

Barbara Southard
Manager
DD Licensing Unit
PO Box 14530

*"Assisting People to Become Independent, Healthy and Safe"*

Defs.' Answer
Exhibit B  Page 1 of 2

Salem, OR 97309

**Davis Jesse B**

---

**From:** Denison Jessica <JESSICA.DENISON@odhs.oregon.gov>
**Sent:** Thursday, December 15, 2022 1:56 PM
**To:** PARR Mike R; Shockley Caitlin
**Subject:** Fw: SFH Requests a Variance

Mike can you read this email and let me know your thoughts?

Thanks!

**From:** Joan Schrader <jschrader@sfh.build>
**Sent:** Thursday, December 15, 2022 1:11 PM
**To:** Denison Jessica <JESSICA.DENISON@dhsoha.state.or.us>; Cota, Kimberly <KCota@clackamas.us>
**Subject:** SFH Requests a Variance

**Think twice** before clicking on links or opening attachments. This email came from outside our organization and might not be safe. If you are not expecting an attachment, contact the sender before opening it.

Hi Jessica and Kim,
I hope you are both well and healthy and looking forward to Christmas.
I don't like to contact two busy people in your positions of responsibility unless it is urgent so because you are getting this email, something is badly amiss...

If the new Community Living Supports rule goes into effect (in less than two weeks) as written, SFH will be in violation of the rule and the six individuals it supports will be made ineligible for Community Living Supports. I have been checking to see if any changes to the proposed rule have been made that would make the previous statement unnecessary, but since no changes have been posted I am led to believe that the rule will go into effect unchanged.

None of the individuals SFH serves are safe without constant supervision and four have very high needs that require two staff for some or all waking hours. The system of care that SFH has designed for addressing the behaviors and medical needs of each individual has been quite successful for many years, but the system depends on SFH's experienced and highly skilled staff. In other words, the individuals SFH cares for would be irrevocably harmed by a sudden change in all of their staff.

SFH must close upon the rule's effect because violating this rule subjects SFH to criminal charges. SFH has a good reputation for its care of individuals and a heretofore clean record. It would be my mental and emotional undoing to continue doing business with criminal charges hanging over my head, but neither ODDS or my CDDP has made plans to assure continuity of care for the individuals SFH serves upon the rule's effect, so you can imagine my fears for the individuals SFH serves.

I request a variance of the part of the rule that affects SFH and the individuals it supports, specifically, OAR 411-450-0060(6)(b).

Individuals who choose the CLS service must, by rule, have housing outside of residential settings to be eligible for CLS's hourly attendant care.

Unlike residential programs such as foster care and group homes, (and some supported living settings), the housing of people in the CLS program does not depend upon the services they receive--- they are free to change providers without losing their homes.

Having housing security is part of why people choose the CLS service option. Another reason for choosing CLS is it allows an individual to choose from a variety of providers which is a necessary element of the program to allow a slow transition for high needs individuals out of their family homes. One fellow SFH serves has taken years to transition out of his family's care and he is almost there. Another fellow has just begun his transition out of family care but it will be years before he fully transitions. This type of transition is not possible in residential care but it may be the only mechanism that works for very high needs individuals to transition out of family care without causing a crisis.

Several years ago I started a non-profit, Slipstream Dream, SSD, hoping to address some of the needs of people with I/DD, their families, and the people that support them. Although I no longer serve on the board, my husband and I still support its mission.

We support SSD's mission by donating the use of our home in its entirety. We lease our home to SSD for $0 and SSD allows us to live in it rent free (We still have to pay our mortgage and taxes of course). Our portion of the home is

2

separate from the other two SSD tenants. They each have a rental agreement with SSD and pay their rent to SSD. One tenant is Tim, whom SFH has supported since 2013 and the other tenant is a homeless family that SSD chose to assist because some of the family members are DSPs. SSD splits the utilities between its three tenants and charges each of us separately for utilities.

SSD has not only assisted Tim and the homeless family in securing housing with rental agreements, it has assisted each of the people SFH serves to secure housing with rental agreements. I mention the rental agreements because these agreements give legal rights to housing that informal or other types of arrangements may not.

Some of SFH's DSPs have also been willing to donate their homes to SSD in this manner. For example, SSD secured housing for three ladies in need of support as a result of a (very difficult!) closure of a group home. SSD secured housing for two of the three ladies through a DSP willing to lease his home in its entirety to SSD. The two ladies live in the two bedroom, two bathroom, main house and the DSP, a single fellow, lives in the basement. The DSP is not their landlord because he has donated the use of his home to SSD, so SSD is their landlord, but the DSP owns the home.

SSD also secured housing for Wesley, Brandon and Andrew in the same manner. DSPs are kind-hearted people in general and although SSD has so far only been able to secure for rent the homes of DSPs, I support its mission to reach out farther than the DSP population for housing.

Because ODDS has defined the word "Provider" as anyone who gets paid to support an individual, each of SFH's DSPs are "Providers".

The rule makes it illegal in the CLS program for a DSP to share a home with an individual the DSP cares for. All of the people SFH serves have housing with rental agreements that fully protect them under Oregon's tenant laws and they all share homes with a DSP.

None of the people SFH serves, however, pay rent to the DSPs who own the homes where they live. Instead, their rent is paid to Slipstream Dream, SSD, whose mission is to assist individuals with I/DD, their families, and their caregivers. If the DSP who owns the home quits their job at SFH and does not work any more

shifts, that change does not affect the rental agreements of the tenants---their homes are secure---it just means that SFH has to hire another DSP---not an easy task these days!

You may wonder why the DSPs are willing to donate their homes in such a manner when they do not get to receive the rent payments. Mostly, they are just plain kind-hearted, but a not-insignificant benefit is that as an employer, SFH cannot take out their taxes from their paychecks for the shifts they work with the individual they share a home with.  That means that each DSP who is willing to donate their home gets a boost in take home pay because they do not have to pay income taxes from their paycheck. It is gratifying to me as an employer of DSPs to see a financial break for them from the IRS---I wish all DSPs could get this kind of a tax break!

So there you have it. Kind-heartedness seems to be in violation of the new rules! :)

I am dedicated to following the rules, but for this one, I will need a variance to the rule to continue to serve people in SFH's CLS program and to abide by the Federal Fair Housing Act and the Americans with Disabilities Act. If I follow the rule, I believe I would be a party along with ODDS to the violation of both of these civil rights laws.

Please let me know as soon as possible how to obtain a variance to the rule.

Warmest regards and Merry Christmas!
Joannie Schrader
SFH Executive Director
360-608-2470

4

# ODDS Variance Request



**Oregon Department of Human Services**
OFFICE OF DEVELOPMENTAL DISABILITIES SERVICES

☐ **New Request**      ☐ **Previously Approved/Continuing Request**      ☒ **Urgent Request***

**This form must be completed by the provider requesting the variance and submitted to the appropriate case management entity. Instructions to complete this form are here (DHS 6001i) or on the forms server. The CDDP or Brokerage will submit the request to ODDS. CDDPs and Brokerages requesting a variance may send the request directly to ODDS. Only electronic variance requests will be accepted. Submit requests to: ODDS.Variances@dhsoha.state.or.us.**

Variance is being requested by: ☒ Provider: Specialty Family Homes      ☐ CDDP/Brokerage: _____

1. County: Clackamas County      2. Case Management Entity: Kim Cota

3. Case Management Entity Contact and Email: kcota@clackamas.us

4. Agency/Provider: Specialty Family Homes      5. Provider email: jschrader@sfh.build

6. Provider Site Address: (*if applicable*) N/A      7. Service/Setting Type: Standard Model Agency

8. Is the variance being requested specific to an individual or expected to personally impact an individual? ☐ No  ☒ Yes

   If yes, list individual(s) and prime number(s): All individuals that SFH Serves

9. OAR for which the variance is being sought (*cite the specific Oregon Administrative Rule number and language of the rule*):

   Rule Number: OAR OAR 411-450-0060(6)(b), OAR 411-450-0020 (24) and (25)

   Rule Text: OAR 411-450-0060(6)(b) An individual is not eligible for community living supports, other than DSA, if the individual resides in one of the following:
   (A) A provider-owned dwelling or a provider-rented dwelling through an informal or formal arrangement.
   (B) A provider owned, controlled, or operated setting.

   OAR 411-450-0020 (24) "Provider-Owned Dwelling" means a dwelling that is owned by a provider or the provider's spouse, when the provider is proposing to be paid for delivering home and community-based services to an individual, and the provider or the provider's spouse is not related to the individual by blood, marriage, or adoption. A provider-owned dwelling includes, but is not limited to:
   (a) A house, apartment, and condominium.
   (b) A portion of a house, such as a basement or a garage, even when remodeled to be used as a separate dwelling.
   (c) A trailer and mobile home.
   (d) A duplex unless the structure displays a separate address from the other residential unit and was originally built as a duplex.
   (25) "Provider-Rented Dwelling" means a dwelling that is rented or leased by a provider or the provider's spouse, when the provider is proposing to be paid for delivering home and community-based services to an individual, and the provider or the provider's spouse is not related to the individual by blood, marriage, or adoption.

Defs.' Answer
Exhibit C  Page 5 of 9

**10.** Requested dates *(individual-specific request- the end date may not exceed the individual's ISP plan year; site or agency request- the end date should not exceed the license/certificate expiration date)*:

Start date: Dec 27ᵗʰ 2022                    End date:  N/A

☒ N/A- explain:                Specialty Family Homes is requesting a varience to a state rule so that we
                                 are not in violation of a Federal Civil Rights Law. As a provider, Specialty
                                 Family Homes is required to uphold all of the civil rights of people with
                                 I/DD. According to ORS 409.040(2) Federal Law Superceds state law. The
                                 state rules violate the Federal Fair Housing act laws as follows:

                                 Federal Fair Housing Act at U. S. C. Title 42 Section 3615 "Nothing in this
                                 subchapter shall be constructed to invalidate or limit any law of a State or
                                 political subdivision of a State, or of any other jurisdiction in which this
                                 subchapter shall be effective, that grants, guarantees, or protects the same
                                 rights as are granted by this subchapter; but any law of a State, a political
                                 subdivision, or other such jurisdiction that purports to require or permit any
                                 action that would be a discriminatory housing practice under this
                                 subchapter shall to that extent be invalid."

                                 Federal Fair Housing Act at U. S. C. Title 42 Section 3617 "It shall be
                                 unlawful to coerce, intimidate, threaten, or interfere with any person in the
                                 exercise or enjoyment of, or on account of his having exercised or enjoyed,
                                 or on account of his having aided or encouraged any other person in the
                                 exercise or enjoyment of, any right granted or protected by section 803,
                                 804, 805, or 806 of this title."

                                 Federal Fair Housing Act at U. S. C. Title 42 section 3604 (f)(1) and (2). "It
                                 shal be unlawful To discriminate in the sale or rental, or to otherwise make
                                 unavailable or deny, a dwelling to any buyer or renter because of a
                                 handicap of that buyer or renter, a person residing in or intending to reside
                                 in that dwelling after it is so sold, rented, or made available; or any person
                                 associated with that buyer or renter.

                                 "It shall be unlawful to discriminate against any person in the terms,
                                 conditions, or privileges of sale or rental of a dwelling, or in the provision of
                                 services or facilities in connection with such dwelling, because of a
                                 handicap of that person; or a person residing in or intending to reside in
                                 that dwelling after it is so sold, rented, or made available; or any person
                                 associated with that person.

                                 Federal Fair Housing Act at U. S. C. Title 42 section 3604 (f)(3)(B)
                                 "Discrimination includes a refusal to make reasonable accommodations in
                                 rules, policies, practices, or services, when such accommodations may be
                                 necessary to afford such person equal opportunity to use and enjoy a
                                 dwelling."

**11.** Provider's proposal for variance *(describe the specific action, alternative practice, or exception being*

Defs.' Answer
Exhibit C  Page 6 of 9

*Requested)*: **The rule should not go into effect so that SFH is not in violation of the Following Federal Fair Housing Act laws:**

**Federal Fair Housing Act at U. S. C. Title 42 Section 3615 "Nothing in this subchapter shall be constructed to invalidate or limit any law of a State or political subdivision of a State, or of any other jurisdiction in which this subchapter shall be effective, that grants, guarantees, or protects the same rights as are granted by this subchapter; but any law of a State, a political subdivision, or other such jurisdiction that purports to require or permit any action that would be a discriminatory housing practice under this subchapter shall to that extent be invalid."**

**Federal Fair Housing Act at U. S. C. Title 42 Section 3617 "It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 803, 804, 805, or 806 of this title."**

**Federal Fair Housing Act at U. S. C. Title 42 section 3604 (f)(1) and (2). "It shal be unlawful To discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of that buyer or renter, a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or any person associated with that buyer or renter.**

**"It shall be unlawful to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of that person; or a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or any person associated with that person.**

**Federal Fair Housing Act at U. S. C. Title 42 section 3604 (f)(3)(B) "Discrimination includes a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling."**

---

**12.** Reason for variance- *explain why a variance is being requested, including how the variance will provide equal or greater effectiveness*:

DHS 6001 (01/2022)

Specialty Family Homes is requesting a varience to a state rule so that we are not in violation of a Federal Civil Rights Law. As a provider, Specialty Family Homes is required to uphold all of the civil rights of people with I/DD. According to ORS 409.040(2) Federal Law Superceds state law. The state rules violate the Federal Fair Housing act laws as follows:

Federal Fair Housing Act at U. S. C. Title 42 Section 3615 "Nothing in this subchapter shall be constructed to invalidate or limit any law of a State or political subdivision of a State, or of any other jurisdiction in which this subchapter shall be effective, that grants, guarantees, or protects the same rights as are granted by this subchapter; but any law of a State, a political subdivision, or other such jurisdiction that purports to require or permit any action that would be a discriminatory housing practice under this subchapter shall to that extent be invalid."

Federal Fair Housing Act at U. S. C. Title 42 Section 3617 "It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 803, 804, 805, or 806 of this title."

Federal Fair Housing Act at U. S. C. Title 42 section 3604 (f)(1) and (2). "It shal be unlawful To discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of that buyer or renter, a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or any person associated with that buyer or renter.

"It shall be unlawful to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of that person; or a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or any person associated with that person.

Federal Fair Housing Act at U. S. C. Title 42 section 3604 (f)(3)(B) "Discrimination includes a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling."

**13.** Describe any alternatives tried, explored, and ruled out- *what was tried or considered and why are these not appropriate options*: Joan Schrader (Executive Director of Speciatly Family Homes) submmited comments to the propesed rule prior to the hearing on the rule.

**14.** Does the proposed variance pose a risk to an individual's ability to receive Medicaid service funding?
☒ No  ☐ Yes     Explain:

**15.** Does the proposed variance present a potential to risk the health and safety of an individual?
☐ No  ☒ Yes
If yes, explain the risk and what is the proposal to mitigate the risk:
The high needs individuals SFH supports will lose their homes and/or caregivers.

**16.** Describe the plan to eliminate a need for a variance in the future *(what efforts or alternatives will be explored or implemented)*:
If ODDS follows the Federal Civil Rights Law protecting individuals with disabilities, there will be no need for a variance in the future.

Agency Provider Signature: *Joan Schrader*     Date: 12-20-2022

Defs.' Answer
Exhibit C  Page 8 of 9

**To be completed by the case management entity** *(Unless variance is being submitted by CME)*

Case Management Entity Recommendation- provide an explanation or summary of the case management entity's recommendation for approval or denial:

_____

Recommend: ☐ Approval ☐ Denial

Case Management Entity Representative Making Recommendation:

_____

Date: _____ Email: _____

---

**To be completed by ODDS**

ODDS Determination:

☐ Approved From: _____ To: _____

☐ Denied

☐ No Variance Needed

ODDS Comments: _____

Signature of ODDS Director/designee: _____ Date: _____

**Submit this form to ODDS via email: ODDS.Variances@dhsoha.state.or.us**

*An "urgent" request is a variance request where due to a situation beyond the control of the provider requesting a variance, a determination is needed immediately (less than 14 days from the date of the submission of the request), for situations such as to facilitate an immediate placement of an individual.

DHS 6001 (01/2022)

Defs.' Answer
Exhibit C  Page 9 of 9



**Oregon Department of Human Services**
Office of Developmental Disabilities Services
500 Summer St. NE E-09
Salem, OR 97301-1073
Voice: 503-945-5811
Fax: 503-373-7274
TTY: 800-282-8096

1/24/2023

Dear Ms. Schrader,

Thank you for your emails dated December 15 and 20, 2022, requesting a variance from
OAR 411-450-0060(6)(b) that went into effect December 20, 2022.  For ODDS to evaluate
your variance request under OAR 411-450-0100, please provide the below information:

1. Please provide verification regarding the transfer of your home to SSD for $0 and
   proof of all deed transfers in the prior 5 years.  Please provide the contract that legally
   obligates you to pay the mortgage and taxes on this home.
2. Please clarify whether either you or your husband serves as an officer or board
   member for any entity that has any ownership interest in SSD.
3. Please provide the names of any entities for which you serve as an officer or board
   member and your role in the entity.
4. Please provide complete copies of the rental agreements for the two tenants living in
   the home with you.
5. Please provide complete copies regarding the agreement to pay utilities, and receipts
   verifying payments for the prior 6 months.
6. Please provide proof of rental payments for the two residents living in the home with
   you for the prior 6 months.
7. Please provide verification of the transfer of any homes by individuals employed by
   SFH to SSD, and the arrangement that clarifies the manner by which they avoid
   income taxes, as offered in your email.
8. Please provide all rental agreements of DSPs employed by SFH for whom SSD acts as
   the landlord.
9. To the extent not already provided by the above, please provide all rental agreements
   of individuals receiving DD services and living in a home that was donated to SSD in
   the last 12 months.
10. Please provide the addresses and contact information for each home for which you
    have verified compliance with HCBS rules and the date on which your verification
    was made.
11. You have indicated that 6 individuals receiving CLS services will be impacted by your
    request.  Please provide their names and the corresponding DSPs or providers that live
    with those individuals.

*"Assisting People to Become Independent, Healthy and Safe"*

Defs.' Answer
Exhibit D  Page 1 of 2

12. Please provide any other information that might be relevant to determining whether you have any direct or indirect financial relationship with the owners of the residential properties for which you are seeking a variance.
13. Please provide a complete copy of your policies and procedures and any other documents memorializing the transfers of property between SFH employees and the impact on their compensation.

Unfortunately, given the short timeline of the request, and confusion regarding the two variance requests and the precise licensing expectation SFH wants varied, these documents need to be provided as soon as possible. Please provide the documents no later than February 3, 2023, by 5:00 pm. ODDS is willing to delay enforcement of the rules to allow submission of these documents so it can properly evaluate the requests before taking corrective action.

Sincerely,

Caitlin Shockley
Policy & Training Unit
Office of Developmental Disabilities Services
email: caitlin.shockley@dhsoha.state.or.us
call/text: 503-510-7228

2

Defs.' Answer
Exhibit D  Page 2 of 2

| | |
|---|---|
| **From:** | Davis Jesse B |
| **Sent:** | Thursday, February 9, 2023 3:37 PM |
| **To:** | Justin Steffen |
| **Cc:** | Lucero Lisa R; Hallman Dylan |
| **Subject:** | Schrader et al. v. Pakseresht--variance request |

Dear Mr. Steffen,

I have been made aware of the email below, which was sent by Ms. Schrader to Kim Cota and Sarah Briggs at the Clackamas County CDDP relating to your clients' pending request for variance. That communication was inappropriately directed to the CDDP, as the variance is an ODHS matter. ODHS asks your client to direct her communications regarding the variance through counsel for the time being.

ODHS's response to Ms. Schrader's email is that all variances are given full consideration. Regarding your client's question below pertaining to OAR 411-450-0100(2)(d), re: submitting a plan or timetable for coming into compliance with the rule from which the variance is sought, is your client stating that she does not intend to submit a such a plan or timetable? If so, that information can be added and considered along with the remainder of the variance request.

As to individuals seeking reasonable accommodations, those requests will be addressed through individualized, case by case assessments through those individuals and/or their designated representatives.

Regards,

**Jesse B. Davis**
Senior Assistant Attorney General
Oregon Department of Justice | Civil Litigation Section | Trial Division
100 SW Market Street
Portland, OR 97201
Tel: 503.856.2342
Fax: 971.673.5000

**From:** Cota, Kimberly <KCota@clackamas.us>
**Sent:** Monday, February 6, 2023 1:19 PM
**To:** Chelas Kronenberg (she/her) <CHELAS.A.KRONENBERG@odhs.oregon.gov>; Denison Jessica <JESSICA.DENISON@odhs.oregon.gov>; PARR Mike R <Mike.R.PARR@dhsoha.state.or.us>
**Subject:** FW: ADA Accommodation Request and Variance Update

**Think twice** before clicking on links or opening attachments. This email came from outside our organization and might not be safe. If you are not expecting an attachment, contact the sender before opening it.

Please see below.

**Kim Cota**
Developmental Disabilities Program Manager
503-557-5814

*she/her/hers* *(Why do pronouns matter?)*



If you or someone near you is experiencing thoughts of suicide or a mental health emergency, or if you need more information about services, please call the Clackamas County Crisis and Support Line at 503-655-8585; available 24 hours a day and 7 days a week.

**From:** Joan Schrader <jschrader@sfh.build>
**Sent:** Monday, February 6, 2023 12:58 PM
**To:** Cota, Kimberly <KCota@clackamas.us>; Briggs, Sarah <SarahBri@clackamas.us>
**Subject:** ADA Accommodation Request and Variance Update

**Warning: External email. Be cautious opening attachments and links.**

Hi Kim and Sarah,
I hope you are both well and I thank you for the work you do for people with I/DD. Your work is so vital to their lives and I thank you on behalf of those who have no voice to thank you :)

2

I submitted a variance but after looking more closely at the variance rule requirements (copied below), it seems that requesting one would be futile because SFH cannot submit a plan as required in (d) below. Is the submission of a plan and timetable always required or can a variance go on indefinitely? If it can go on indefinitely, then I will be happy to resubmit a variance request, otherwise I fear it may be futile.

> (2) The agency requesting a variance must submit a written application to the Department that contains the following:
>
> > (a) The section of the rule from which the variance is sought;
> >
> > (b) The reason for the proposed variance;
> >
> > (c) The alternative practice, service, method, concept, or procedure proposed;
> >
> > (d) A plan and timetable for compliance with the section of the rule from which the variance is sought; and
> >
> > (e) If the variance applies to an individual's service, evidence that the variance is consistent with the individual's current ISP.

Perhaps an ADA accommodation would be more appropriate since the accommodation could potentially be permanent instead of temporary like the variance seems. Who is the ADA coordinator to contact for such an accommodation?

Best Regards,

Joannie Schrader
SFH Executive Director
360-608-2470



**Oregon**
Tina Kotek, Governor

**Department of Human Services**

*Office of Developmental Disabilities Services*
500 Summer St. NE E-09
Salem, OR 97301-1073
Voice: 503-945-5811
Fax: 503-373-7274
TTY: 800-282-8096

July 13, 2023

Oregon Department
of Human Services

Joan Schrader

11806 SE Solomon Ct.

Happy Valley, OR 97086

Dear Ms. Schrader:

On January 24, 2023, the Oregon Department of Human Services, Office of
Developmental Disabilities Services (ODDS) sent you a letter, requesting
information necessary to address your emails requesting a variance from OAR 411-
450-0060(6)(b). A courtesy copy of that letter is enclosed for your reference.

ODDS again requests that same information. ODDS will process your variance
request based on your responses and the information available to ODDS on July
24, 2023. Please inform me if you do not intend to provide additional information.

Sincerely,

Caitlin Shockley

Policy & Training Unit

Office of Developmental Disabilities Services

email: caitlin.shockley@dhsoha.state.or.us

call/text: 503-510-7228


Enclosure



**Oregon Department of Human Services**
Office of Developmental Disabilities Services
500 Summer St. NE E-09
Salem, OR 97301-1073
Voice: 503-945-5811
Fax: 503-373-7274
TTY: 800-282-8096

1/24/2023

Dear Ms. Schrader,

Thank you for your emails dated December 15 and 20, 2022, requesting a variance from OAR 411-450-0060(6)(b) that went into effect December 20, 2022. For ODDS to evaluate your variance request under OAR 411-450-0100, please provide the below information:

1. Please provide verification regarding the transfer of your home to SSD for $0 and proof of all deed transfers in the prior 5 years. Please provide the contract that legally obligates you to pay the mortgage and taxes on this home.
2. Please clarify whether either you or your husband serves as an officer or board member for any entity that has any ownership interest in SSD.
3. Please provide the names of any entities for which you serve as an officer or board member and your role in the entity.
4. Please provide complete copies of the rental agreements for the two tenants living in the home with you.
5. Please provide complete copies regarding the agreement to pay utilities, and receipts verifying payments for the prior 6 months.
6. Please provide proof of rental payments for the two residents living in the home with you for the prior 6 months.
7. Please provide verification of the transfer of any homes by individuals employed by SFH to SSD, and the arrangement that clarifies the manner by which they avoid income taxes, as offered in your email.
8. Please provide all rental agreements of DSPs employed by SFH for whom SSD acts as the landlord.
9. To the extent not already provided by the above, please provide all rental agreements of individuals receiving DD services and living in a home that was donated to SSD in the last 12 months.
10. Please provide the addresses and contact information for each home for which you have verified compliance with HCBS rules and the date on which your verification was made.
11. You have indicated that 6 individuals receiving CLS services will be impacted by your request. Please provide their names and the corresponding DSPs or providers that live with those individuals.

*"Assisting People to Become Independent, Healthy and Safe"*

12. Please provide any other information that might be relevant to determining whether you have any direct or indirect financial relationship with the owners of the residential properties for which you are seeking a variance.
13. Please provide a complete copy of your policies and procedures and any other documents memorializing the transfers of property between SFH employees and the impact on their compensation.

Unfortunately, given the short timeline of the request, and confusion regarding the two variance requests and the precise licensing expectation SFH wants varied, these documents need to be provided as soon as possible. Please provide the documents no later than February 3, 2023, by 5:00 pm. ODDS is willing to delay enforcement of the rules to allow submission of these documents so it can properly evaluate the requests before taking corrective action.

Sincerely,

Caitlin Shockley
Policy & Training Unit
Office of Developmental Disabilities Services
email: caitlin.shockley@dhsoha.state.or.us
call/text: 503-510-7228

2

Defs.' Answer
Exhibit F  Page 4 of 4

**Davis Jesse B**

From: Joan Schrader <schraderwin@gmail.com>
Sent: Wednesday, September 6, 2023 9:11 PM
To: Davis Jesse B
Subject: Re: Response to January 24, 2023 Letter from Ms. Shockley [Schrader]

*CAUTION EXTERNAL EMAIL* This email originated from outside of DOJ. Treat attachments and links with caution. *CAUTION EXTERNAL EMAIL*

Hello Mr. Davis,
   Since you are now enforcing the rule, it is important for all of the parties to know what legally constitutes compliance with the rule---how does the DOJ interpret compliance? Without understanding what I am to comply with, how can I comply by December 31, 2023?
Please explain what defines "eligible services" in "eligible settings" for SFH, an hourly attendant care agency provider, under the community living supports rule.
Thank you.
Joan Schrader
Executive Director
SFH

On Wed, Sep 6, 2023 at 6:49 PM Davis Jesse B <jesse.b.davis@doj.state.or.us> wrote:

Ms. Schrader,

I am not going to respond at this time to your questions about ODDS's position regarding all possible conditions or variations under which SFH's clients would be able to rent your home. I don't know enough about their present circumstances and arrangements to respond definitively to those questions. I will say only that SFH's clients have to receive eligible services in an eligible setting, and the applicable rules govern what services and settings are eligible.

As to your request for an extension of time to respond to the motions to dismiss, let's confer when we discuss tomorrow.

Jesse B. Davis

Oregon Department of Justice

Cell: 503.856.2342

**From:** Joan Schrader <schraderwin@gmail.com>
**Sent:** Monday, August 28, 2023 8:36 PM
**To:** Davis Jesse B <jesse.b.davis@doj.state.or.us>
**Cc:** Hallman Dylan <dylan.hallman@doj.state.or.us>; Simmons Amy <amy.simmons@doj.state.or.us>
**Subject:** Re: Response to January 24, 2023 Letter from Ms. Shockley [Schrader]

**\*CAUTION EXTERNAL EMAIL\*** This email originated from outside of DOJ. Treat attachments and links with caution. **\*CAUTION EXTERNAL EMAIL\***

Hello Mr. Davis,

Thank you for your response.

I delayed in responding to you because I had hoped to secure an attorney and then my attorney would answer you. However, I have not secured an attorney as of yet and twenty days have passed so I am answering you directly.

I withdraw my variance request of December 20, 2022 because it would be futile since ODDS does not grant a permanent variance to rules.

I would like to continue the ADA process that you certified to the Court that was under way. I was not aware that a process had been started, but you stated,

"The parties are at the beginning of a dialog assessing the need for accommodation and what reasonable accommodation may be reached, and ODHS has already stated its willingness to delay enforcement to allow evaluation of the variance requests."

I understand that you are not delaying enforcement, however, because you intend to enforce the rule as of January 1, 2023, and the County has begun to plan for this enforcement because today, in

a meeting with a Clackamas County case manager and her supervisor, two SFH clients were informed that to continue to be eligible for the Community Living Supports Program, they will have to move out of their rental home if they wish to continue receiving some or all hours of attendant care from SFH. Alternatively, in order to continue to live in their rental home, the two clients must fire SFH as their provider and hire other providers to deliver their hourly attendant care services. Is this an accurate representation of ODHS's position?

Additionally, I asked the case manager and her supervisor under what conditions the two SFH clients could maintain the status quo--- i.e. continue to live in their rental home and receive some or all of their hourly attendant care services from SFH.

The answer I understood to be communicated was that the rental home would have to be sold to an entity or person outside of any connection with me or with SFH. This limitation to the sphere of potential buyers means that the home could not be sold to me or any of my relatives, to SFH or any of SFH's employees or their relatives. Additionally the buyer must be wholly unconnected to Slipstream Dream. Under these restrictions to the ownership of the home, the two SFH clients would be free to rent the home from the new owner, and receive attendant care in the Community Living Supports Program from SFH.

Is this an accurate characterization of the conditions under which the two SFH clients can remain in their rental home and continue to receive services from SFH?

Lastly, I have been diligent in my quest to secure counsel, but have faced two themes in my many requests. First, attorneys deny familiarity with the laws at issue and second, they deny any openings in their schedule. Admittedly, the law is complex and I do understand that attorneys carry a heavy load of cases. I do not wish to face federal Court as a pro se litigant, however, so I continue to reach out for representation.

Because I have been unable to secure counsel, I would like to motion the Court for a 90 day extension of time from the currently set deadline of September 19, 2023, to reply to your motions to dismiss cases 1957 and 945. I will continue to seek representation during this time which would allow for a sooner response to your motions but I need the time to prepare my own responses in the unfortunate event that I am unable to secure counsel.

Under the circumstances, I believe my request should be unopposed unless you think it ill-advised to request such a long extension of time. If that is the case, I will request 60 days instead of 90.

Sincerely,

Joan Schrader

On Tue, Aug 8, 2023 at 12:59 PM Davis Jesse B <jesse.b.davis@doj.state.or.us> wrote:

Ms. Schrader,

ODDS does not generally grant permanent or open-ended variances. Generally, ODDS will grant appropriate variances that are either time-limited or that are confined to existing circumstances where those circumstances may be reviewed periodically. Again, I emphasize that this discussion of temporary versus permanent variances is somewhat academic without knowing what your actual variance request is.

There is no specific process or form for requesting an ADA accommodation. Simply provide to me, as succinctly as possible, the information that you believe demonstrates that the requested accommodation is reasonable and necessary, and I will route it appropriately.

Please also let me know whether you intend to withdraw the December 20, 2022, variance request.

I will not argue with you about the details of prior communications or who produced what delay. I will just reiterate that ODDS expects the rules to be implemented on January 1, 2024, unless ODDS, with the benefit of all necessary information, has authorized a variance or accommodation before that date.

Regards,

4

**Jesse B. Davis**

Senior Assistant Attorney General

Oregon Department of Justice | Civil Litigation Section | Trial Division

100 SW Market Street

Portland, OR 97201

Tel: 503.856.2342

Fax: 971.673.5000

---

**From:** Joan Schrader <schraderwin@gmail.com>
**Sent:** Wednesday, August 2, 2023 2:28 PM
**To:** Davis Jesse B <jesse.b.davis@doj.state.or.us>
**Cc:** Hallman Dylan <dylan.hallman@doj.state.or.us>; Simmons Amy <amy.simmons@doj.state.or.us>
**Subject:** Re: Response to January 24, 2023 Letter from Ms. Shockley [Schrader]

**\*CAUTION EXTERNAL EMAIL\* This email originated from outside of DOJ. Treat attachments and links with caution. \*CAUTION EXTERNAL EMAIL\***

Hello Mr. Davis,

Thank you for your response to my email.

Please keep in mind that the point of this litigation is to assure that individuals with I/DD enjoy an equal opportunity to live with whom they please and in what dwelling they please just like non-disabled Oregonians.

With this in mind, I address each of your points as you numbered them.

1.      I need to know if ODDS allows for a variance to be permanent to determine if a variance request is an avenue to obtain a permanent solution to the violation of the rights of individuals with I/DD.

The answer is important because there is no reason for me to respond to the variance questions ODDS poses in its letter dated January 24, 2023, if a variance cannot be permanent. Please answer this question with a simple "yes" or "no".

2.      My February 6, 2023, email to the CDDP asked two questions---can a variance be permanent, and can I have the name of the ADA coordinator. I was instructed to submit the variance to the CDDP, which I did.Your emailed response on February 9, 2023, not only failed to answer both of these questions but was also illogical and confusing.

 It was illogical for you to claim that my questions were "inappropriately directed to the CDDP" when I was instructed to go through the CDDP to obtain a variance.

Furthermore, ODHS's response as stated in your letter of February 9, 2023, was confusing because it did not address whether or not a variance to a rule could be permanent nor did it direct me to the ADA coordinator as I requested--- in other words, I was just left hanging.

3.      I am happy to communicate directly with you regarding the variance request and possible ADA accommodation. Can we begin with the answers to my questions?

Will you kindly review the applicable laws and rules and tell me if an ODDS variance can be permanent?

Will you also clarify the process for requesting an ADA accommodation? For example, is there a particular form that ODDS expects for an ADA accommodation request? If so, would you please send me the form?

4.      I do not ask ODHS to answer the question of whether or not it would be futile for me to continue with a variance. I ask you, as ODHS's attorney, to inform me if there is a rule or policy that allows a variance to be permanent.

Also, kindly refrain from stating that I have made variance "requests". I have made a single variance request, on a single ODDS form. ODDS has not answered whether or not a variance can be permanent, and I am awaiting that answer so that I may make an informed decision whether or not to pursue a variance.

Finally, SFH is not out of compliance with any rules--- the newly promulgated rules make individuals with I/DD ineligible to receive hourly attendant care services in the Community Living Support program--- the only non-residential program that ODHS offers. The rules question what kind of home in which disabled individuals live and with whom they live, and based on these answers, they are denied access to the Community Living Support Program.

Additionally, it is I who have been waiting on ODDS---ODDS is not waiting on me. I have been waiting since February 6, 2023, for an answer to a simple question which will determine whether I continue to pursue a variance or not--- "Can a variance be permanent?"

The administrative delay you noted has been caused by ODDS's refusal to answer my questions. Is it not incumbent upon ODDS to answer my questions in a timely manner so that I can either go forward with my variance request or rescind my request for a variance?

Thank you for informing me of your intention to enforce, on January 1, 2024, the ODDS rules that violate the civil rights of disabled individuals.

Sincerely,

On Tue, Aug 1, 2023 at 3:39 PM Davis Jesse B <jesse.b.davis@doj.state.or.us> wrote:

Ms. Schrader,

I have now reviewed your July 26, 2023, email in more detail. Your email brings up several matters that we need to address:

1. You seem to be saying that you have not answered ODDS' letter dated January 24, 2023, because the December 22, 2022, variance request does not address the rule in its finalized form. If that variance request is no longer pertinent, please confirm that you wish to withdraw it so ODDS can bring that process to a conclusion.

2. You refer to your email of February 6, 2023, to the CDDP, and you suggest that you did not answer the questions in the January 24 letter because you were awaiting a response to your February 6 email. In fact, I responded on behalf of ODDS to your February 6 email by sending an email on February 9 to your counsel, Justin Steffen. A copy of that email is attached for your reference. I never received a response to that email.

3. You ask about the ADA coordinator and the process for making an ADA accommodation. Since we are in litigation, and to simplify tracking of communications, if you wish to submit a request for accommodation, please send it to me, and I will route it to ODDS appropriately. The same goes for any further variance request. Please send it to me and I will forward it to ODDS. Communications regarding variances or accommodations related to the rules in question should not be submitted to the CDDP.

4. Both your February 6 and your July 26 emails seem to ask whether your variance request would be futile. It is impossible for ODDS to respond to that question because it is now unclear what your variance request is. If the issue is whether the requested variance is to be temporary versus permanent, please specify that in your variance request itself.

Finally, I want to point out that if you make a new variance request that is at all similar to your previous requests, I would expect ODDS to have the same questions that it posed in its January 24, 2023, letter. ODDS has been awaiting that information for over six months now, all while you remain out of compliance with the applicable rules. If you want a variance or an accommodation, it is incumbent on you to make the appropriate requests and provide supporting information in a timely way. The administrative procedures regarding your previous requests have already produced significant delay. Unless ODDS grants a request for variance or accommodation, ODDS intends to enforce the rules beginning on January 1, 2024, in order to allow time for choice counseling and changes to individuals' plans before that date.

Regards,

**Jesse B. Davis**

Senior Assistant Attorney General

Oregon Department of Justice | Civil Litigation Section | Trial Division

100 SW Market Street

Portland, OR 97201

Tel: 503.856.2342

Fax: 971.673.5000

**From:** Davis Jesse B
**Sent:** Monday, July 31, 2023 10:46 AM
**To:** Joan Schrader <schraderwin@gmail.com>
**Cc:** Hallman Dylan <dylan.hallman@doj.state.or.us>; Simmons Amy <amy.simmons@doj.state.or.us>
**Subject:** RE: Response to January 24, 2023 Letter from Ms. Shockley

Ms. Schrader,

This email will confirm that I received your email below.  I was out of the office last week when this email came in, so I was unable to respond timely.  I will confer with my client and respond as soon as reasonably possible.

Regards,

**Jesse B. Davis**

Senior Assistant Attorney General

Oregon Department of Justice | Civil Litigation Section | Trial Division

100 SW Market Street

Portland, OR 97201

Tel: 503.856.2342

Fax: 971.673.5000

**From:** Joan Schrader <schraderwin@gmail.com>
**Sent:** Wednesday, July 26, 2023 2:57 PM
**To:** Davis Jesse B <jesse.b.davis@doj.state.or.us>
**Cc:** Hallman Dylan <dylan.hallman@doj.state.or.us>; Simmons Amy <amy.simmons@doj.state.or.us>
**Subject:** Response to January 24, 2023 Letter from Ms. Shockley

**\*CAUTION EXTERNAL EMAIL\*** This email originated from outside of DOJ. Treat attachments and links with caution. **\*CAUTION EXTERNAL EMAIL\***

Dear Mr. Davis,

I was surprised to receive the letter of July 13, 2023, from Ms. Shockley requesting my response to the January 24, 2023, letter from the Oregon Department of Human Services, Office of Developmental Disabilities Services (ODDS). I was surprised because I am the one awaiting a response from ODDS to questions I submitted to ODDS in February of 2023--- it is not ODDS that is awaiting my response.

Perhaps the history of communications will be helpful for you.

On December 15, 2022, I emailed the ODDS licensing unit and requested a variance to the newly promulgated Community Living Supports rule that I believed was to be finalized on December 27, 2022. On the same day, Ms. Kim Kota, the program manager of the Clackamas County Developmental Disabilities Program, CDDP, replied and sent me the ODDS variance form.

ODDS requires providers to submit variance requests to administrative rules on a variance request form to their CDDP, and on December 20, 2022, I submitted the variance request form to Ms. Kota as per the ODDS process for variance requests. This variance request was based on the rule as proposed in the filing of the proposed rule changes and is in the ODDS files.

However, the rule was actually finalized a week early, on December 20, 2022, and was finalized with added language that was not in the rule as proposed. The variance request form I submitted did not address the new language in the rule as finalized because at the time I submitted the variance form, I was not aware that the rule had been finalized with language additions.

On January 24, 2023, Ms. Shockley sent me questions regarding the variance request form that I submitted to the CDDP. Curiously, that letter stated:

> *Unfortunately, given the short timeline of the request, and confusion regarding the two variance requests and the precise licensing expectation SFH wants varied, these documents need to be provided as soon as possible.*

It is unclear why Ms. Shockley claims a short timeline and two variance requests. The single variance request I submitted was as timely as possible--- I made the request even before the rule was actually finalized. It is also curious that Ms. Shockley had any confusion as to the single variance request form that I submitted. ODDS has my single variance request form on file, and to date, I have not submitted any other variance request form. Also, to be clear, I submitted a variance to the Community Living Supports rule, I did not submit a variance request to a licensing requirement, so I am unsure what is meant by Ms. Shockley's reference to "the precise licensing expectation SFH wants varied".

On February 6, 2023, I emailed the CDDP because it is the CDDP to whom the ODDS process requires me to submit variance requests. I wrote:

> *I submitted a variance but after looking more closely at the variance rule requirements (copied below), it seems that requesting one would be futile because SFH cannot submit a plan as required in (d) below. Is the submission of a plan and timetable always required or can a variance go on indefinitely? If it can go on indefinitely, then I will be happy to resubmit a variance request, otherwise I fear it may be futile.*

> *Perhaps an ADA accommodation would be more appropriate since the accommodation could potentially be permanent instead of temporary like the variance seems. Who is the ADA coordinator to contact for such an accommodation?*

I have not answered your questions of January 24, 2023, because your questions are directed at the single variance form I submitted which does not address the rules as finalized.

Before I submit a new variance request to addresses the rule language as finalized, I need to know if a variance request would be futile. Additionally, ODDS has failed to inform me of the name and contact information of the ADA coordinator to contact to request an ADA accommodation.

I have received no answer from ODDS to these vital questions, the answers to which will determine my responses.

Please explain the variance request process, because I particularly need to know if the variance process allows for a permanent variance to a rule.

12

I may request an ADA accommodation to the rule in lieu of or in addition to the variance request because the new rule violates the Constitutional rights and Oregon statutory rights of individuals with intellectual and developmental disabilities, and their rights should be protected during the pendency of litigation.

Importantly, I believe that a variance or an ADA accommodation would allow a more efficient use of the Court's time and attention because I am preparing to file a motion to reconsider the Court's opinion and order denying the preliminary injunction.

If ODDS approved a permanent variance or an ADA accommodation, then the motion to reconsider would be unnecessary except to correct the record to reflect the facts and the laws that defendant misstates in defendant's filings with the Court.

To summarize, ODDS must first answer my questions so that I may determine if I should submit a second variance-- i.e. a variance request to the rules as finalized. Then, after my questions are answered, if I submit a variance request to the rule as finalized, I will promptly address information requests of ODDS regarding the variance request I submit.

Please discontinue sending me questions regarding the variance that I submitted on December 20, 2022, because that variance request does not address the language in the rule as finalized. Also, please send me the name and contact information of the ADA Coordinator.


Sincerely,

--

**Joan Schrader**

Specialty Family Homes

11806 SE Solomon Ct.

Happy Valley, OR 97086

Cell: 360-608-2470

---

***** CONFIDENTIALITY NOTICE *****

This e-mail may contain information that is privileged, confidential, or otherwise exempt from disclosure under applicable law. If you are not the addressee or it appears from the context or otherwise that you have received this e-mail in error, please advise me immediately by reply e-mail, keep the contents confidential, and immediately delete the message and any attachments from your system.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

--

**Joan Schrader**

Specialty Family Homes

11806 SE Solomon Ct.

Happy Valley, OR 97086

Cell: 360-608-2470

---

**\*\*\*\*\* CONFIDENTIALITY NOTICE \*\*\*\*\***
This e-mail may contain information that is privileged, confidential, or otherwise exempt from disclosure under applicable law. If you are not the addressee or it appears from the context or otherwise that you have received this e-mail in error, please advise me immediately by reply e-mail, keep the contents confidential, and immediately delete the message and any attachments from your system.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

--

**Joan Schrader**

Specialty Family Homes

11806 SE Solomon Ct.

Happy Valley, OR 97086

Cell: 360-608-2470

---

***** CONFIDENTIALITY NOTICE *****
This e-mail may contain information that is privileged, confidential, or otherwise exempt from disclosure under applicable law. If you are not the addressee or it appears from the context or otherwise that you have received this e-mail in error, please advise me immediately by reply e-mail, keep the contents confidential, and immediately delete the message and any attachments from your system.

**********************************

--
**Joan Schrader**
Specialty Family Homes
11806 SE Solomon Ct.
Happy Valley, OR 97086
Cell: 360-608-2470

**Davis Jesse B**

---

| | |
|---|---|
| **From:** | Joan Schrader <schraderwin@gmail.com> |
| **Sent:** | Wednesday, September 13, 2023 3:36 PM |
| **To:** | Davis Jesse B |
| **Cc:** | Hallman Dylan; Simmons Amy |
| **Subject:** | Reasonable Accommodations for ▮C.W.▮ , ▮C.M.▮ and ▮W.R.▮ |

---

> **\*CAUTION EXTERNAL EMAIL\* This email originated from outside of DOJ. Treat attachments and links with caution. \*CAUTION EXTERNAL EMAIL\***

Hello Mr. Davis,

Thank you for conferring with me and agreeing not to contest my motion for an extension of 30 days.

I understand that I was mistaken that you had begun a process to determine if a reasonable accommodation for SFH clients was appropriate.

Since the rules are now being enforced, ▮C.W.▮ , ▮C.M.▮ , and ▮W.R.▮ , three clients that assign hours of attendant care to SFH, have been informed by ODHS case management that they are not eligible for the Community Living Supports program and thus require a reasonable accommodation to the rule.

They have each been given a date of December 31, 2023 to either move out of their homes or change providers to any other providers other than SFH to remain eligible for the Community Living Supports program--- the only nonresidential care program that ODHS administers.

By Oregon Statutes, ODHS is obligated to deliver services in the home of the individual if the individual chooses nonresidential services in the Community Living Supports program as an alternative to residential care in one of ODHS's three residential options.

This means that without a reasonable accommodation to the rule, they cannot access a home in the community like a person without a disability.

A person without a disability may choose to rent any home and live with whom they wish but ▮C.W.▮ , ▮C.M.▮ and ▮W.R.▮ cannot. If they choose to live in a home with the wrong person, they are not eligible for Community Living Support services --- services they need to maintain their health and safety because they are disabled. The "wrong person" in this case is a caregiver paid to assist them in their own home.

To remain eligible for the services that they need because they are disabled, they must move out of their home because they share their home with one of their caregivers.

A reasonable accommodation to the rule would allow the disabled person to share housing with whomever they wish, including a caregiver paid to care for the individual. This would provide the individuals with disabilities to an equal opportunity to access housing upon the same terms as individuals without disabilities--- the very purpose of an ADA accommodation.

Defendant has stated that the individual would not have to move out of their home if they quit receiving care from the qualified caregiver with whom they live. This is not accurate because even if the caregiver quit

providing care to the individual, the rule still denies the individual eligibility for the Community Living Supports program because the rule denies an individual eligibility for the program if the individual shares housing with *any employee* of an agency that delivers care to the individual.

That means that the caregiver with whom the disabled person lives would have to quit their job to be able to continue to share housing with the disabled person.

The restrictions that the new rule places on disabled individuals and the individuals associated with them thwarts the disabled individuals' ability to live in the community on the same terms that individuals without disabilities are able to live, which is the purpose of the Community Living Supports program itself.

I request a reasonable accommodation to the rule and look forward to the interactive process that will hopefully result in access for disabled individuals to the same housing options available to non-disabled people.

Respectfully,
--
**Joan Schrader**
Specialty Family Homes
11806 SE Solomon Ct.
Happy Valley, OR 97086
Cell: 360-608-2470

# DEPARTMENT OF JUSTICE
### TRIAL DIVISION

January 31, 2024

*Via Email Only:* *elliott.williams@stoel.com*

Elliott J. Williams
Stoel Rives LLP
760 SW Ninth Avenue, Suite 3000
Portland OR  97205

> Re:     Request for reasonable accommodation
> *Schrader, Joan and Specialty Family Homes v. Fariborz Pakseresht*
> United States District Court Case No. 3:22-cv-01957-JR

Dear Elliott:

I am responding, on behalf of my client, the Office of Developmental Disabilities Services ("ODDS"), to a September 13, 2023, email I received from your client, Joan Schrader, with the subject line "Reasonable Accommodations for Crystal, Corinna and Wesley."  I ask you to convey this letter to your client, as it is my client's response to that email.  ODDS understands that email as requesting reasonable accommodation of ODHS rules governing the delivery of attendant care services under the community living supports ("CLS") program.  Those rules include OAR 411-450-0060(6)(b)(B), which provides that an individual is not eligible for CLS, other than day support activities, if the individual resides in a "provider owned, controlled, or operated setting, including a setting owned, controlled, or operated by an employee of a provider agency."

Consideration of whether reasonable accommodation is necessary to allow the clients of Specialty Family Homes, LLC ("SFH") to participate in the CLS program will occur in the context of person-centered planning for those clients.

ODHS will also consider whether a reasonable accommodation of the rules is necessary to allow SFH to participate in the CLS program.  In order to do that, ODDS asks you to provide the additional information provided below:

1.  Please describe why it is necessary that individuals be eligible to receive, and that SFH be permitted to provide, CLS services to clients in settings that the rules say are ineligible settings.  In other words, what difficulties would you or SFH face in providing CLS services to clients at settings that are not owned, operated, or controlled by you, SFH, or any other entity with which you have a direct or indirect financial relationship?  Similarly, what difficulties would you or SFH face in providing CLS services to clients at settings that are not owned, operated, or controlled by SFH employees?

2. Please describe whether and how licensure, the method prescribed by ORS chapter 443 and other provisions of law by which SFH may provide services in a provider-owned, controlled, or operated setting, prevents SFH from providing services to its clients.

3. If ODDS made the requested accommodation, and thus allowed you to continue providing care under the present circumstances without the license prescribed by ORS chapter 443, please describe how you and SFH could assure ODDS that it would have a comparable degree of authority and oversight of conditions and circumstances of SFH's clients that would exist if SFH had obtained the license prescribed by ORS chapter 443. In other words, how can ODDS be confident in the safety and welfare of those clients, and how can ODDS be confident it can enforce the safety and welfare of those clients, to a degree that is comparable to what would exist if you did obtain a license?

4. ODDS did not obtain from you the information it requested in January 2023 in response to your request for a variance from OAR 411-450-0060(6)(b)(B). Although you withdrew that variance request, the information ODDS requested is relevant to your request for reasonable accommodation. ODDS asks you to provide that information, and additional information, as described below:

    a. Information regarding your home:

        i. Regarding the property located at 11806 SE Solomon Court, Happy Valley, Oregon, 97086, which ODDS understands is your home, please provide all records of any transfer of any interest in that property, or any contract to transfer any interest in that property, from 2014 to present. Please also provide all records regarding the consideration paid for those transfers of interest or contracts.

        ii. Please provide any contract that obligates you or any other person to pay any portion of the mortgages, taxes, utilities, or other costs associated with that property, from 2015 to present. Please provide proof of payment of those mortgages, taxes, utilities, and other costs.

        iii. Please identify which current or former clients of SFH have lived in that property from 2014 to the present.

        iv. For each such current or former SFH client, please provide complete copies of all rental or other agreements permitting those clients to live in that property.

        v. Please identify which current or former employees of SFH have lived in that property from 2014 to the present.

        vi. For each such current or former SFH client, please provide complete copies of all agreements permitting those employees to live in that property.

b. Information regarding the relationship between you, SFH, SFH's employees, and Slipstream Dream. Note that for purpose of brevity, for purposes of this request, "Slipstream Dream" ("SSD") refers both to the current entity called "Slipstream Dream" and the former entity called "SlipstreamDream":

    i. Please provide the name of any entity for which you have served as an officer, board member, or agent between 2014 and the present, and describe your role in each such entity.

    ii. Please clarify whether you, your husband, or your son, Samuel Schrader, currently serve as an officer or board member for SSD or any entity that has any interest in SSD. If not currently serving in such a role, please clarify when you, your husband, or Samuel Schrader last served in such a role, if at all.

    iii. Please describe any agreements or contracts by or between you, your husband, Samuel Schrader, SFH, or SSD, or any of them, between 2014 and the present, and provide complete copies of such agreements or contracts.

    iv. Please describe any agreements or contracts between any current or former employee of SFH and SSD from 2014 to the present and provide complete copies of such agreements or contracts.

    v. Please describe which current or former employees of SFH live with, or have lived with, clients of SFH from 2014 to the present, as well as the locations and period of time where that occurred.

    vi. Please fully describe the arrangement you mentioned in your email dated December 15, 2022, by which SFH employees are able to avoid paying income taxes for shifts they work with the SFH clients they live with. Please identify any SFH employee who has participated in such an arrangement. Please also describe how SFH employees' donation of their homes is involved in that arrangement.

    vii. To the extent not included in the above, please provide relevant information, including supporting documentation, about any SFH client receiving services from SFH between 2014 and the present while living in a setting that was donated or otherwise deeded to SSD.

    viii. Please provide a complete copy of SFH's policies, procedures, or other documents regarding transfers of property between employees of SFH and others with whom you or SFH have any direct or indirect financial relationship.

    ix.  Please also provide a complete copy of SFH's policies, procedures, or other documents regarding employee compensation, including the impact of transfers in property interests on employee compensation. Please also describe any non-wage compensation paid to SFH employees or on behalf of SFH employees from 2014 to the present in a form other than wages, including but not limited to compensation in the form of vehicles or payment of tuition expenses on behalf of the employee.

    x.  Please provide any other information that might assist ODDS in determining whether you have any direct or indirect financial relationship with the owners of any property at which any SFH client has resided between 2014 and the present.

c.  Information about SFH clients:

    i.  To the extent not included in the above, please identify all of the current or former SFH clients who you believe have been impacted by the rules described above, including OAR 411-450-0060. Please also provide the names of the individual caregivers for those clients.

    ii.  Please describe the efforts you have made to advise each client of SFH, or their legal representatives or family members, about their options to obtain services in a way that complies with OAR 411-450-0060 and other program rules.

    iii.  Please provide information about what residential arrangements you anticipate will be made in the event that the pending contested case hearings result in Final Orders upholding the Notices of Planned Actions.

I look forward to receiving this information promptly so that ODDS can evaluate the request for reasonable accommodation.

Sincerely,

Jesse B. Davis
Senior Assistant Attorney General

947923751/JBD/a4s

1

2

3

4          IN THE CIRCUIT COURT OF THE STATE OF OREGON

5                      FOR THE COUNTY OF MARION

6  JOAN SCHRADER AND SPECIALTY          Case No. 19CV50925
   FAMILY HOMES LLC,                    Honorable Claudia M. Burton
7
                                        ORDER GRANTING RESPONDENT'S ORCP 21
8          Petitioners,                 MOTIONS TO DISMISS AND STRIKE

9      v.

10 OREGON DEPARTMENT OF HUMAN
   SERVICES OFFICE OF
11 DEVELOPMENTAL DISABILITIES,          **ORS 20.140 - State fees deferred at filing**

12         Respondent.

13         This matter came before the Court on September 17, 2020, for a telephonic oral argument

14 on Respondent's ORCP 21 Motions to Dismiss and Strike (ORCP 21 A, E).  Petitioner Joan

15 Schrader appeared on her own behalf.  Petitioner Specialty Family Homes LLC was represented

16 by attorney Russell L. Baldwin.  Respondent Oregon Department of Human Services (DHS) was

17 represented by Senior Assistant Attorney General Jesse B. Davis.  The Court heard the

18 arguments of the parties, reviewed the filings, and is fully advised in the matter.  Therefore, the

19 Court, consistent with the reasons stated on the record, hereby FINDS and ORDERS as follows:

20    1.    On September 15, 2020, the Court directed petitioners to file an unredacted copy

21          of the Exhibit 10 to the Second Amended Petition for Judicial Review.  The

22          following day, petitioners filed a "Declaration of Petitioner Joan Schrader

23          submitting documents under seal," attaching, among other things, an unredacted

24          copy of Exhibit 10.

25    2.    Respondent's Motion to Strike is GRANTED.  Exhibit 10 was not signed by the

26          services coordinator or other representative or designee of DHS.  Petitioners'

Page 1 -  ORDER GRANTING RESPONDENT'S ORCP 21 MOTIONS TO DISMISS AND STRIKE
          JBD/maf/10451483-v1

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Defs.' Answer
Exhibit K  Page 1 of 7

1       allegations that DHS agreed to 376 hours per week of attendant care for AM by

2       the signature of its service coordinator are false on the face of the pleadings.  All

3       allegations that DHS agree to 376 hours per week of attendant care, and all

4       allegations that flow from those allegations, as marked in Attachment 1 to

5       Respondent's ORCP 21 Motions, are hereby STRICKEN from the Second

6       Amended Petition.  ORCP 21 E(2).

7    3.      Respondent's motion to dismiss petitioners' breach of contract claims, claims

8       found in Count C of the Second Amended Petition, is GRANTED.  After the

9       allegations regarding DHS's obligations are stricken as described above,

10       petitioners' remaining allegations fail to allege a contractual obligation breached

11       by DHS.  Count C is DISMISSED.  ORCP 21 A(8).

12    4.      Respondent's motion to dismiss petitioners' challenge to the cease and desist

13       order, found in Count B, is GRANTED.  The cease and desist order is not a final

14       order subject to judicial review.  Therefore, the Court lacks jurisdiction over

15       Count B, which is DISMISSED.  ORCP 21 A(1).

16    5.      The stop payment order is a final order in other than a contested case, and is

17       therefore subject to judicial review in this Court under ORS 183.484.

18    6.      On petitioners' challenge to the stop payment order under ORS 183.484,

19       respondent's motion to dismiss is GRANTED as to Counts B, D, and E, as

20       follows:

21       A.      As a matter of law, nothing in Medicaid statutes or regulations or in

22            Oregon statutes or administrative rules, prohibits DHS from requiring a

23            license to provide care in a provider-owned or controlled residential

24            setting.  DHS's licensing requirement does not violate a developmentally

25            disabled client's freedom to choose her provider or providers of services.

26            Petitioners are not entitled to relief on the basis of an erroneous

JBD/maf/10451483-v1

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

1   interpretation of law, ORS 183.484(5)(a)(A), or improper exercise of

2   discretion, ORS 183.484(5)(a)(B), and Count B is DISMISSED.

3   B.   As a matter of law, DHS did not violate federal or state statutes or rules

4        governing its payment obligations to petitioners.  Petitioners are not

5        entitled to relief on the basis of an erroneous interpretation of law, ORS

6        183.484(5)(a)(A), or improper exercise of discretion, ORS

7        183.484(5)(a)(B), and Count D is DISMISSED.

8   C.   As to Count E:

9        i.   Petitioners lack standing to assert AM's rights under Medicaid.

10            Alternatively, if petitioners have standing to assert AM's rights

11            under Medicaid, the Court finds that, as a matter of law, AM does

12            not have a right under Medicaid statutes or regulations to live in a

13            setting owned or controlled by petitioners free of generally

14            applicable licensing requirements imposed by Oregon law.

15       ii.  As to petitioners' rights, the Court finds that, as a matter of law,

16            petitioners do not have a right under Medicaid statutes or

17            regulations to provide AM's care in a setting owned or controlled

18            by petitioners free of generally applicable licensing requirements

19            imposed by Oregon law.  Petitioners are not entitled to relief on the

20            basis of an agency's erroneous interpretation of law, ORS

21            183.484(5)(a)(A), or improper exercise of discretion, ORS

22            183.484(5)(a)(B), and Count E is DISMISSED.

23  7.   Petitioners' claim for a declaratory judgment is precluded by the exclusivity of the

24       remedies available under the Administrative Procedures Act.  Therefore, the

25       Court lacks jurisdiction to provide declaratory relief, ORCP 21 A(1), and Count G

26       will is DISMISSED.

Page 3 -   ORDER GRANTING RESPONDENT'S ORCP 21 MOTIONS TO DISMISS AND STRIKE

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

1      8.     As to Counts H, J, and K, asserting violations of the Fair Housing Act, Americans

2           with Disabilities Act (ADA), and Rehabilitation Act, Respondent's motion to

3           dismiss is GRANTED as follows:

4           A.     To the extent that Counts H, J, and K attempt to enforce the rights of AM

5                  under those statutes, petitioners lack the capacity to do so.  ORCP 26, 27.

6                  AM is an adult with legally appointed guardians capable of asserting her

7                  rights.

8           B.     To the extent that petitioners attempt to assert associational standing,

9                  petitioners fail to establish that associational standing is a recognized basis

10                for standing under the ADA or the Rehabilitation Act.  And even if

11                associational standing were a recognized basis for standing under the

12                ADA or the Rehabilitation Act, petitioners fail to allege facts sufficient to

13                state a claim for violations of either statute for all the reasons stated on the

14                record.  Counts H and J are DISMISSED.  ORCP 21 A(8).

15           C.     Petitioners fail to allege facts sufficient to state a claim for violation of the

16                Fair Housing Act for all the reasons stated on the record.  Count K is

17                DISMISSED.  ORCP 21 A(8).

18      9.     Petitioners' request to replead is GRANTED as follows:

19           A.     Petitioners are GRANTED leave to replead their breach of contract claim

20                in a manner not inconsistent with the ruling of the Court as stated on the

21                record.

22           B.     Petitioners are GRANTED leave to assert a claim, pursuant to ORS

23                183.484(5)(c), that the stop payment order's conclusion that petitioners

24                were providing care in a provider-owned or controlled setting without a

25                license is not supported by substantial evidence in the record.

26

JBD/maf/10451483-v1

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

1    C. As to the remaining claims dismissed by this Order, petitioners' request to

2    amend or replead those claims is DENIED.  Signed: 10/13/2020 04:15 PM

3 IT IS SO ORDERED.

4 The court has considered the objections to the form of this order filed by Ms. Schrader
  and the response to those objections and finds that this order accurately reflects the
5 rulings of the court.

6            Signed: 10/13/2020 04:16 PM

7

8        _____

          **Circuit Court Judge Claudia M. Burton**

9 Submitted by: Jesse B. Davis
       Senior Assistant Attorney General
10     Attorneys for State of Oregon

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Page 5 - ORDER GRANTING RESPONDENT'S ORCP 21 MOTIONS TO DISMISS AND STRIKE
   JBD/maf/10451483-v1

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

**CERTIFICATE OF READINESS**

1

2       This proposed **ORDER GRANTING RESPONDENT'S ORCP 21 MOTIONS TO**

3 **DISMISS AND STRIKE** is ready for judicial signature because:

4 1.    [   ]    Each party affected by this order or judgment has stipulated to the order or

5 judgment, as shown by each opposing party's signature on the document being submitted.

6 2.    [   ]    Each party affected by this order or judgment has approved the order or judgment,

7 as shown by each party's signature on the document being submitted or by written confirmation

8 of approval sent to me.

9 **3.**    **[  x  ]**   **I have served a copy of this order or judgment on each party entitled to**

10 **service and:**

11      a.     [   ]    No objection has been served on me.

12      b.     **[  x  ]**   I received objections that I could not resolve with a party despite

13 reasonable efforts to do so. I have filed a copy of the objections I received and indicated which

14 objections remain unresolved.  **Petitioner Schrader has already filed objections. Petitioner**

15 **Specialty Family Homes has not served me with objections**

16      c.     [   ]    After conferring about objections, [role and name of objecting party]

17 agreed to independently file any remaining objection.

18 4.    [   ]    Service is not required pursuant to subsection (3) of this rule, or by statute, rule,

19 or otherwise.

20 5.    [   ]    This is a proposed judgment that includes an award of punitive damages and

21 notice has been served on the Director of the Crime Victims' Assistance Section as required by

22 subsection (5) of this rule.

23

24

25

26

Page 1 -   CERTIFICATE OF READINESS
       JBD/a3m/9974723-v1

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

1   6.    [ ]   Other:_____.

2         DATED this  9th  day of October, 2020.

3

                                     *s/ Jesse B. Davis*
                                 JESSE B. DAVIS #052290

4                           Senior Assistant Attorney General
                           Trial Attorney

5                           Tel (971) 673-1880
                           Fax (971) 673-5000

6                           jesse.b.davis@doj.state.or.us
                           Of Attorneys for Respondent

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Page 2 -   CERTIFICATE OF READINESS
        JBD/a3m/9974723-v1

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

BLS                NO PART OF ANY STEVENS-NESS FORM MAY BE REPRODUCED IN ANY FORM OR BY ANY ELECTRONIC OR MECHANICAL MEANS.

JOAN E. SCHRADER
8431 SE 11th Avenue
Portland, OR  97202
*Grantor's Name and Address*
WILLIAM J. SCHRADER
11806 SE Solomon Court
Happy Valley, OR  97086
*Grantee's Name and Address*

After recording, return to (Name and Address):
William J. Schrader
11806 SE Solomon Court
Happy Valley, OR   97086

Until requested otherwise, send all tax statements to (Name and Address):
William Schrader
11806 SE Solomon Court
Happy Valley, OR   97086

SPACE RESERVED
FOR
RECORDER'S USE

**BARGAIN AND SALE DEED**

KNOW ALL BY THESE PRESENTS that _____ JOAN E. SCHRADER _____
_____ ,
hereinafter called grantor, for the consideration hereinafter stated, does hereby grant, bargain, sell and convey unto _____
_____ WILLIAM J. SCHRADER _____ ,
hereinafter called grantee, and unto grantee's heirs, successors and assigns, all of that certain real property, with the tenements, hered-
itaments and appurtenances thereunto belonging or in any way appertaining, situated in _____ County,
State of Oregon, described as follows *(legal description of property)*:

PARCEL I:

Part of Lot 3, SOUTH VIEW HEIGHTS, in Section 34, Township 1 South, Range 2 East, of the Willamette Meridian, in the
County of Clackamas and State of Oregon, more particularly described as follows:

BEGINNING at the Northeast corner of Lot 3, SOUTH VIEW HEIGHTS, which is also the Northeast corner of that certain
tract of land conveyed to Raymond E. Crites, et ux, by Book 637, Page 667, Deed Records; thence South along the East
boundary of said Crites tract, 225.0 feet to the Southeast corner thereof and the true point of beginning of the tract herein
to be described; thence South 89°28' West, tracing the South boundary of said Crites tract and the Westerly extension
thereof, to a point that is 205.0 feet South of the Northwest corner of said Lot 3; thence South along said West boundary
to the Southwest corner of said Lot 3; thence East tracing the South boundary of said Lot 3 a distance of 200.0 feet to the
Southeast corner thereof; thence North along the East boundary of said Lot 3 a distance of 155.0 feet to the true point of
beginning.

PARCEL II:

Tract B, THE HIGHPOINTE, in the County of Clackamas and State of Oregon.
** love and affection

(IF SPACE INSUFFICIENT, CONTINUE DESCRIPTION ON REVERSE)

To Have and to Hold the same unto grantee and grantee's heirs, successors and assigns forever.
The true and actual consideration paid for this transfer, stated in terms of dollars, is $_____ ** _____. ① However, the
actual consideration consists of or includes other property or value given or promised which is ☐ part of the ☐ the whole (indicate
which) consideration.① (The sentence between the symbols ①, if not applicable, should be deleted. See ORS 93.030.)
In construing this instrument, where the context so requires, the singular includes the plural, and all grammatical changes
shall be made so that this instrument shall apply equally to businesses, other entities and to individuals.
IN WITNESS WHEREOF, grantor has executed this instrument on _____ October 8, 2019 _____ ; any
signature on behalf of a business or other entity is made with the authority of that entity.

BEFORE SIGNING OR ACCEPTING THIS INSTRUMENT, THE PERSON TRANSFERRING FEE TITLE SHOULD
INQUIRE ABOUT THE PERSON'S RIGHTS, IF ANY, UNDER ORS 195.300, 195.301 AND 195.305 TO 195.336 AND
SECTIONS 5 TO 11, CHAPTER 424, OREGON LAWS 2007, SECTIONS 2 TO 9 AND 17, CHAPTER 855, OREGON
LAWS 2009, AND SECTIONS 2 TO 7, CHAPTER 8, OREGON LAWS 2010. THIS INSTRUMENT DOES NOT ALLOW
USE OF THE PROPERTY DESCRIBED IN THIS INSTRUMENT IN VIOLATION OF APPLICABLE LAND USE LAWS
AND REGULATIONS. BEFORE SIGNING OR ACCEPTING THIS INSTRUMENT, THE PERSON ACQUIRING FEE TITLE
TO THE PROPERTY SHOULD CHECK WITH THE APPROPRIATE CITY OR COUNTY PLANNING DEPARTMENT TO
VERIFY THAT THE UNIT OF LAND BEING TRANSFERRED IS A LAWFULLY ESTABLISHED LOT OR PARCEL, AS
DEFINED IN ORS 92.010 OR 215.010, TO VERIFY THE APPROVED USES OF THE LOT OR PARCEL, TO DETER-
MINE ANY LIMITS ON LAWSUITS AGAINST FARMING OR FOREST PRACTICES, AS DEFINED IN ORS 30.930, AND
TO INQUIRE ABOUT THE RIGHTS OF NEIGHBORING PROPERTY OWNERS, IF ANY, UNDER ORS 195.300,
195.301 AND 195.305 TO 195.336 AND SECTIONS 5 TO 11, CHAPTER 424, OREGON LAWS 2007, SECTIONS 2
TO 9 AND 17, CHAPTER 855, OREGON LAWS 2009, AND SECTIONS 2 TO 7, CHAPTER 8, OREGON LAWS 2010.

*Joan E. Schrader*

STATE OF OREGON, County of ___ Multnomah _____ ) ss.
This instrument was acknowledged before me on _____ October 8, 2019 _____ ,
by _____ Joan E. Schrader _____ ,
This instrument was acknowledged before me on _____ ,
by _____
as _____
of _____

OFFICIAL STAMP
STEVEN EDWARD BENSON
NOTARY PUBLIC-OREGON
COMMISSION NO. 940828
MY COMMISSION EXPIRES JULY 12, 2019

Notary Public for Oregon
My commission expires _____ July 12, 2019 _____

PUBLISHER'S NOTE: If using this form to convey real property subject to ORS 92.027, include the required reference.

**BARGAIN AND SALE DEED**
William J. Schrader and Joan E. Schrader, Grantors
8431 SE 11th
Portland, OR  97202
Patrick Edward McFall Sr., Grantee
29558 SW Glacier Way
Wilsonville, OR  97070
After recording return to:
William J. Schrader and Joan E. Schrader, Grantors
8431 SE 11th
Portland, OR  97202
Until a change is requested, all tax statements
Shall be sent to the following address:
William J. Schrader and Joan E. Schrader, Grantors
8431 SE 11th
Portland, OR  97202

Clackamas County Official Records
Sherry Hall, County Clerk

2019-069062

$93.00

0227604620190069062010017

10/31/2019 02:10:02 PM

D-D          Cnt=1  Stn=54 CONNIEBRO
$5.00 $16.00 $62.00 $10.00

---

**BARGAIN AND SALE DEED**

KNOW ALL BY THESE PRESENTS that William J. Schrader and Joan E. Schrader, hereinafter called grantor, for the consideration hereinafter stated, does hereby grant, bargain, sell and convey unto Patrick Edward McFall Sr., an Oregon resident, hereinafter called grantee, and unto grantee's successors and assigns, all of that certain real property, with the tenements, hereditaments and appurtenances thereunto belonging or in any way appertaining, situated in Clackamas County, State of Oregon, described as follows, to-wit:

PARCEL I:

Part of Lot 3, SOUTH VIEW HEIGHTS, in Section 34, Township 1 South, Range 2 East, of the Willamette Meridian, in the County of Clackamas and State of Oregon, more particularly described as follows:

BEGINNING at the Northeast corner of Lot 3, SOUTH VIEW HEIGHTS, which is also the Northeast corner of that certain tract of land conveyed to Raymond E. Crites, et ux, by Book 637, Page 667, Deed Records; thence South along the East boundary of said Crites tract, 225.0 feet to the Southeast corner thereof and the true point of beginning of the tract herein to be described; thence South 89°28' West, tracing the South boundary of said Crites tract and the Westerly extension thereof, to a point that is 205.0 feet South of the Northwest corner of said Lot 3; thence South along said West boundary to the Southwest corner of said Lot 3; thence East tracing the South boundary of said Lot 3 a distance of 200.0 feet to the Southeast corner thereof; thence North along the East boundary of said Lot 3 a distance of 155.0 feet to the true point of beginning.

PARCEL II:

Tract B, THE HIGHPOINTE, in the County of Clackamas and State of Oregon.

**(Commonly known as: 11806 SE Solomon Ct., Happy Valley, OR  97086)**

To Have and to Hold the same unto grantee and grantees' heirs, successors and assigns forever.

The true and actual consideration paid for this transfer, stated in terms of dollars, is:  other which is the whole consideration.

In construing this deed, where the context so requires, the singular includes the plural, and all grammatical changes shall be made so that this deed shall apply equally to trusts and to individuals.

IN WITNESS WHEREOF, William J. Schrader and Joan E. Schrader executed this instrument on _10/31/19_, 2019;

THE PROPERTY DESCRIBED IN THIS INSTRUMENT MAY NOT BE WITHIN A FIRE PROTECTION DISTRICT PROTECTING STRUCTURES. THE PROPERTY IS SUBJECT TO LAND USE LAWS AND REGULATIONS THAT, IN FARM OR FOREST ZONES, MAY NOT AUTHORIZE CONSTRUCTION OR SITING OF A RESIDENCE AND THAT LIMIT LAWSUITS AGAINST FARMING OR FOREST PRACTICES, AS DEFINED IN ORS 30.930 (Definitions for ORS 30.930 to 30.947), IN ALL ZONES. BEFORE SIGNING OR ACCEPTING THIS INSTRUMENT, THE PERSON TRANSFERRING FEE TITLE SHOULD INQUIRE ABOUT THE PERSONS RIGHTS, IF ANY, UNDER ORS 195.300 (Definitions for ORS 195.300 to 195.336), 195.301 (Legislative findings) AND 195.305 (Compensation for restriction of use of real property due to land use regulation) TO 195.336 (Compensation and Conservation Fund) AND SECTIONS 5 TO 11, CHAPTER 424, OREGON LAWS 2007, SECTIONS 2 TO 9 AND 17, CHAPTER 855, OREGON LAWS 2009, AND SECTIONS 2 TO 7, CHAPTER 8, OREGON LAWS 2010. BEFORE SIGNING OR ACCEPTING THIS INSTRUMENT, THE PERSON ACQUIRING FEE TITLE TO THE PROPERTY SHOULD CHECK WITH THE APPROPRIATE CITY OR COUNTY PLANNING DEPARTMENT TO VERIFY THAT THE UNIT OF LAND BEING TRANSFERRED IS A LAWFULLY ESTABLISHED LOT OR PARCEL, AS DEFINED IN ORS 92.010 (Definitions for ORS 92.010 to 92.192) OR 215.010 (Definitions), TO VERIFY THE APPROVED USES OF THE LOT OR PARCEL, TO VERIFY THE EXISTENCE OF FIRE PROTECTION FOR STRUCTURES AND TO INQUIRE ABOUT THE RIGHTS OF NEIGHBORING PROPERTY OWNERS, IF ANY, UNDER ORS 195.300 (Definitions for ORS 195.300 to 195.336), 195.301 (Legislative findings) AND 195.305 (Compensation for restriction of use of real property due to land use regulation) TO 195.336 (Compensation and Conservation Fund) AND SECTIONS 5 TO 11, CHAPTER 424, OREGON LAWS 2007, SECTIONS 2 TO 9 AND 17, CHAPTER 855, OREGON LAWS 2009, AND SECTIONS 2 TO 7, CHAPTER 8, OREGON LAWS 2010.

Joan E. Schrader, Grantor

William J. Schrader, Grantor

STATE OF OREGON, County of _Multnomah_          )ss.

THIS CERTIFIES that on this _31st_ day of _October_, 2019, before me, this instrument was acknowledged by William J. Schrader and Joan E. Schrader who have approved and signed this instrument as their voluntary act and deed.

Before me: _____
Notary public for Oregon
My commission expires: _11/13/2021_

OFFICIAL STAMP
MICHELE D DOLAN
NOTARY PUBLIC-OREGON
COMMISSION NO. 968440
MY COMMISSION EXPIRES NOVEMBER 13, 2021

Page 1 – Bargain and Sale Deed

Defs.' Answer
Exhibit Q  Page 1 of 1